Lawrence PIZLO, et al.,
Plaintiffs–Appellants,

v.

BETHLEHEM STEEL CORPORATION;
General Pension Board of Bethlehem
Steel Corporation and Subsidiary Companies; Pension Trust of Bethlehem
Steel Corporation and Subsidiary Companies; Pension Plan of Bethlehem
Steel Corporation and Subsidiary Companies, Defendants–Appellees.

No. 88–1153.

United States Court of Appeals,
Fourth Circuit.

Argued Feb. 9, 1989.

Decided Aug. 21, 1989.

Terrence Michael Finn (Douglas G. Worrall, Jeffrey Y. Laynor, Smith, Somerville & Case on brief), for plaintiffs-appellants.

G. Stewart Webb, Jr. (Barbara E. Schlaff, Gregory A. Cross, Venable, Baetjer and Howard on brief), for defendants-appellees.

Before MURNAGHAN, Circuit Judge, BUTZNER, Senior Circuit Judge and TILLEY, United States District Judge for the Middle District of North Carolina, sitting by designation.

TILLEY, District Judge:

Plaintiffs, present and former salaried employees of Bethlehem Steel Corporation, appeal the dismissal of a series of claims under the Employee Retirement Income Security Act, 29 U.S.C. § 1001 *et. seq.* ("ERISA") and state law claims based upon breach of an employment contract, promissory estoppel and negligent misrepresentation. The district court did not dismiss Plaintiffs' state law claim regarding breach of contract to pay compensatory time and indicated it would remand the claim to state court[1]. We affirm the dismissal of the supplemental payment claims, and the ERISA claims, but reverse with directions to remand to state court the dismissed state law claims relating to the alleged formation of an employment contract for a minimum term.

I

In the summer of 1982, Bethlehem Steel Corporation ("Bethlehem") distributed a brochure describing a variety of changes to Bethlehem's compensation and benefit programs that were to become effective on January 1, 1983. Allegedly contrary to a representation made by Bethlehem's chairman of the board earlier in the year that there would be no changes to the pension plan, these changes included the imposition of a penalty for early retirement. Specifically, an incremental percentage decrease in an employee's retirement benefit was imposed if he or she retired prior to attaining the age of 62. The brochure describing the changes was accompanied by a recorded statement from Bethlehem's president, apparently intended to assuage employees' fears. The statements informed employees that modifications to the plan were for the purpose of "encourag[ing] employees to remain with Bethlehem for a full career."

Shortly after this brochure and recorded statement were distributed, Bethlehem organized a series of meetings, held in the summer of 1983, between the employees of its Sparrows Point plant and John Roberts, the general manager of the plant. The purpose of these meetings was to provide the employees with more details about the changes to the pension plan. At the meetings, Roberts allegedly told the employees that they were "the team" and that "there will be no more cuts in staff." He added that the employees should feel free to take their spouses to dinner, buy a new car or purchase a new home, because they had no reason to fear not having a job with Bethlehem. With respect to the early retirement penalty, Roberts stated that the purpose for the provision was to keep the employees working at Bethlehem until they reached age 62.

Two and one-half years later, the plan was amended again, effective January 1, 1986. This amendment "froze" the level of retirement benefits to those earned as of December 31, 1985. As such, those Plaintiffs still working as of December 31, 1985, were not entitled to any additional benefits under the plan. The freeze of benefits was applied by calculating an individual's retirement benefits using earnings and continuous service as of December 31, 1985.

Subsequently, some of the Plaintiffs were terminated prior to their respective 62nd birthdays. The 1983 amendments resulted in those persons receiving lower benefits than they would have received had

---

1. Plaintiffs–Appellants acknowledged at oral argument that the court lacked diversity jurisdiction because some of the plaintiffs, like some of the defendants, are citizens of Pennsylvania.

they remained in the company's employ until age 62.

Plaintiffs filed the instant action in the Circuit Court for Baltimore County, Maryland as a protective action on March 10, 1988. The litigation between these parties originally began, however, in 1986 when two related cases were filed in the United States District Court for the District of Maryland where Plaintiffs in this case were initially proceeding as two separate groups. Those employees who had been terminated by Bethlehem prior to April, 1986, had filed suit on April 17, 1986, in a case entitled *Moyer v. Bethlehem Steel Corp.*, Civ. No. JFM–86–1223 ("Moyer"); those still employed by Bethlehem on and after April 1, 1986, had filed suit on December 23, 1986 in *Pizlo v. Bethlehem Steel Corp.*, Civ. No. JFM–86–3788 ("Pizlo I"). The Plaintiffs in *Moyer* filed an amended complaint on February 12, 1987, and the Plaintiffs in *Pizlo I* did the same on April 10, 1987. Both groups of Plaintiffs were represented by the same attorneys.

The original and first amended complaints in *Moyer* alleged causes of action for breach of fiduciary duty under ERISA based upon an alleged improper funding of a retirement plan, breach of contract, and fraud and deceit. Similarly, both the original and amended complaints in *Pizlo I* stated claims for breach of fiduciary duty, improper funding of Bethlehem's pension plan, and breach of contract. Each of the complaints named as defendants: Bethlehem, the members of the corporation's Board of Directors, the corporation's General Pension Board, the Pension Trust and certain individual officers of the corporation.

In response to the first amended complaints in both *Moyer* and *Pizlo I*, the Defendants moved to dismiss or, in the alternative, for a more definite statement. As part of those motions, Defendants also moved to disqualify Plaintiffs' counsel because one of the attorneys had worked for Bethlehem prior to entering private practice. The District Court of Maryland, in separate memorandum opinions, concluded that the *Moyer* and *Pizlo I* Plaintiffs had filed complaints too vague insofar as they alleged that Defendants had "underfunded" the pension plan. The court further concluded that ERISA preempted Plaintiffs' state law claims. Accordingly, the court dismissed both actions, but granted Plaintiffs leave to amend the ERISA claims. The court also granted the motion to disqualify counsel.

After obtaining new counsel and several extensions of time, Plaintiffs filed second amended complaints in *Pizlo I* and *Moyer* on February 26, 1988. Anticipating that the complaints had exceeded the permissible scope of their leaves to amend, Plaintiffs filed this action in the Circuit Court for Baltimore, Maryland ("*Pizlo II*"). Defendants then removed it to the United States District Court for the District of Maryland.

Thus, as of the middle of March, 1988, three separate but related suits alleging nearly identical claims were before the district court—*Moyer*, *Pizlo I* and *Pizlo II*.

Defendants moved to dismiss both the second amended complaints and the *Pizlo II* complaint. On August 1, 1988, the district court entered a memorandum opinion and order in both *Moyer* and *Pizlo I* granting Defendants' motion to dismiss, concluding the second amended complaints exceeded the scope of the leaves to amend. Although basing the dismissal on procedural grounds, the district court went on to consider the substantive aspects of the Plaintiffs' claims. The court concluded that four of the five ERISA counts were insufficient to state causes of action, and that the fifth ERISA claim was not alleged with sufficient particularity. The state law claims were found to have been preempted by ERISA. The Plaintiffs did not appeal the district court's dismissals of either *Moyer* or *Pizlo I*.

In a separate opinion, the district court dismissed all but one of Plaintiffs' claims in the instant case, adopting the findings in *Moyer* and *Pizlo I* and holding that the federal claims failed to state causes of action under ERISA and that the state claims, except for the contractual claim for non-payment of compensatory time which

would be remanded to state court, were preempted.

## II

■ Plaintiffs' elections not to appeal the final judgments in *Pizlo I* and *Moyer* do not preclude their litigating the substantially identical claims stated in *Pizlo II*. The most compelling reason for this result is that *res judicata* simply does not come into play. *Pizlo I, Moyer* and *Pizlo II* were decided simultaneously on August 1, 1988, and Plaintiffs need only appeal the adverse adjudications they wish. Were the *Pizlo II* Plaintiffs forced to appeal all three cases in order to preserve the right to appeal any one case, needless appeals, wasted judicial resources and increased legal expenses to the parties would necessarily result.

■ Moreover, even if *Pizlo I* and *Moyer* had been decided prior to the judgment in *Pizlo II, res judicata* would not bar this action. Although a final judgment *on the merits* of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action, *Federated Dept. Stores, Inc. v. Moitie,* 452 U.S. 394, 398–99, 101 S.Ct. 2424, 2428, 69 L.Ed.2d 103 (1981), the dismissals of *Moyer* and *Pizlo I* were based on those Plaintiffs having exceeded their leaves to amend the complaints, a procedural ground. The statements of the district court relating to the substantive merits of the *Moyer* and *Pizlo I* claims were dicta with respect to those cases and only carry weight, by adoption in a separate opinion, as the reasoning for dismissing *Pizlo II*.

■ Had the district court dismissed *Moyer* and *Pizlo I* on alternative grounds, one procedural and one substantive, *res judicata* would not prevent the litigating of *Pizlo II*. When a dismissal is based on two determinations, one of which would not render the judgment a bar to another action on the same claim, the dismissal should not operate as a bar. Restatement (Second) of Judgments § 20, Comment e and Illustration 4 at 173; *cited with approval Brantley v. Surles,* 718 F.2d 1354, 1360 (5th Cir.1983) (Garwood, J., concurring).

*Stebbins v. Nationwide Mut. Ins. Co.,* 528 F.2d 934 (4th Cir.), *cert. denied* 424 U.S. 946, 96 S.Ct. 1417, 47 L.Ed.2d 353 (1976) does not alter the analysis of this case. In *Stebbins,* a *pro se* plaintiff brought an action under federal civil rights statutes alleging that an insurance company had denied him employment on account of his race. The United States District Court for the District of Maryland dismissed the complaint on the basis of *res judicata* and the plaintiff appealed. This court held that the prior litigation between the two parties arising out of the same subject matter, although not disposed of on the merits (Stebbins had failed to obtain a statutory Notice of Right to Sue from the Equal Employment Opportunity Commission), barred the second suit because the first action was not decided on the merits solely due to Plaintiff's intentional disregard of statutory preconditions to suit. It was stated:

> The doctrine of *res judicata* traditionally applies only to those cases which have been fully litigated on their merits.... Because of the peculiar posture of the case, we cannot say that the earlier judgment was "on the merits," but ... this litigation must be deemed to be concluded.

528 F.2d at 937.

In explanation, the Court added:

> More importantly, however, the unfairness that would result to Nationwide from a new trial is substantial and manifest. Nationwide not only prepared to litigate the merits of the first suit, but actually participated in a hearing on the merits. A review of the transcript of that hearing discloses that it was a full-blown trial and the district court's order, although it relies on the doctrine of collateral estoppel, contains a statement to the effect that the district court found Stebbins to be unemployable. Thus, the issues were fully litigated, notwithstanding the district court's failure to follow through with formal findings of facts and our affirmance based upon an alternate "non-merits" ground. It would

clearly be unfair to burden Nationwide with a second action when the fact that the first action was not decided on the merits is due solely to Stebbins' intentional disregard of the statutory precondition.... We do not believe that the burden of a new trial should be placed upon Nationwide when the fault rests wholly upon Stebbins' shoulders.

528 F.2d at 937–38. None of the factors which compelled the result in *Stebbins* are present here.

### III

■ The dismissal of *Pizlo II* counts one through five are affirmed on the reasoning of the district court as stated in *Pizlo I* and *Moyer*. Counts one, two, three and five are preempted by ERISA because they rest on an allegation that the pension plan was modified by informal and unauthorized amendment which, as a matter of law, is impermissible. *See* 29 U.S.C. § 1102(b)(3) (1982); *Nachwalter v. Christie*, 805 F.2d 956, 960–61 (11th Cir.1986). Count four seeks entitlement under ERISA to a $400 per month supplemental payment, eliminated by the 1983 amendments, to be paid to early retirees before they attain the age of 62. However, as the district court properly found, this was a social security bridge benefit, *see* Treas. Reg. § 1.411(a)–7(a)(4)(ii) (1988) and, as such, is not an accrued benefit for ERISA purposes. *See* H.R.Rep. No. 807, 93d Cong., 2d Sess., *reprinted in* 1974 U.S.Code Cong. & Admin.News 4670, 4726.

### IV

■ Plaintiffs' state law claims for breach of contract, promissory estoppel and negligent misrepresentation (counts six, eight and nine, respectively) should not have been dismissed. ERISA preempts "any and all state laws insofar as they may now or hereafter relate to any employee benefit plan...." 29 U.S.C. § 1144(a) (1982). As the district court correctly noted, this Court has stated that "the phrase 'relate to' has been read expansively, giving 'unparalleled breadth' to the preemption provision." *Salomon v. Transamerica Oc-*

*cidental Life Ins. Co.*, 801 F.2d 659, 661 (4th Cir.1986). Nevertheless, the claims asserted here are not preempted by ERISA because they do not "relate to" an employee benefit plan.

In *Holland v. Burlington Industries, Inc.*, 772 F.2d 1140 (4th Cir.1985), *affirmed sub. nom Brooks v. Burlington Industries, Inc.*, 477 U.S. 901, 106 S.Ct. 3267, 91 L.Ed.2d 559, *cert. denied sub. nom Slack v. Burlington Industries, Inc.*, 477 U.S. 903, 106 S.Ct. 3271, 91 L.Ed.2d 562 (1986), we noted the policies underlying ERISA:

> Preemption applies to a state cause of action under common law as well, for the state breach of contract and estoppel claims pose the same potential as the statutory cause of action for *conflicting employer obligations and variable standards of recovery*. As in *Gilbert [Gilbert v. Burlington Industries, Inc.*, 765 F.2d 320 (2nd Cir.1985)]*, "the state law claims ... would determine whether any benefits are paid, and directly affect the administration of benefits under the plan."* 765 F.2d at 327.

772 F.2d at 1147 (emphasis added); *see also Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1, 107 S.Ct. 2211, 2217, 96 L.Ed.2d 1 (1987).

The claims here would not submit Bethlehem to "conflicting employer obligations and variable standards of recovery", "determine whether any benefits are paid" nor "directly affect the administration of benefits under the plan." *See Sorosky v. Burroughs Corp.*, 826 F.2d 794, 800 (9th Cir. 1987). The claims do not bring into question whether Plaintiffs are eligible for plan benefits, but whether they were wrongfully terminated from employment after an alleged oral contract of employment for a term. In their state law claims, the Plaintiffs seek from the corporation compensatory damages for wages and pension, health, life and disability benefits that they would have been entitled to had the alleged contract to work until age 62 not been breached. If the Plaintiffs prevail, the damages would be measured in part by the lost pension benefits the Plaintiffs would have received, but the pension trust itself would

not be liable and the administrators of the pension plan would not be burdened in any way. *See Fort Halifax Packing,* 107 S.Ct. at 2218 (Once "single event" of writing check to compensate plaintiff's over, employer has no further responsibility); *Schlenz v. United Airlines, Inc.,* 678 F.Supp. 230, 235 (N.D.Cal.1988) (Damage award for lost future benefits nothing more than a "one time, lump sum" payment which does not implicate concerns underlying ERISA); *Totton v. New York Life Ins. Co.,* 685 F.Supp. 27, 31 (D.Conn. 1987) (Although amount of recovery could, in part, be measured by benefits the plan would have provided, it does not become an obligation of the plan).

Accordingly, as the count seven contractual claim for nonpayment of compensatory time is not before the court, we affirm the dismissal of counts one through five on the reasoning of the district court and reverse as to counts six, eight and nine with directions to remand those claims to the Circuit Court for Baltimore County.

AFFIRMED IN PART; REVERSED IN PART WITH INSTRUCTIONS TO REMAND.