**COOK WHOLESALE OF MEDINA, INC., and Janis R. Smith, as Trustee of the Cook Wholesale of Medina, Inc. Pension Trust, and Janis R. Smith, Individually, Plaintiffs,**

v.

**CONNECTICUT GENERAL LIFE INSURANCE COMPANY, Charles K. Sauberan, Doing Business Under The Firm Name Sauberan, Cox and Associates, and Cigna Securities, Inc., Defendants.**

No. 94–CV–26C.

United States District Court, W.D. New York.

Sept. 20, 1995.

Beckerman and Beckerman (Gerald Beckerman, of counsel), Rochester, NY, for Plaintiffs.

Nixon, Hargrave, Devans & Doyle (Carolyn G. Nussbaum, of Counsel), Rochester, NY, for Defendants.

## BACKGROUND

CURTIN, District Judge.

Plaintiffs Cook Wholesale of Medina, Inc. ("Cook") and its corporate officer and plan trustee, Janis R. Smith brought suit in state court against defendants Cigna Securities, Inc. ("Cigna"), Connecticut General Life Insurance Company ("Connecticut General") and their authorized agent and representative, Charles K. Sauberan, based upon the defendants' alleged failure to provide the plaintiffs with financial planning services for which they had contracted, including a benefit pension plan for Cook's employees. Defendants removed the action to federal court, claiming that the plaintiffs' state law claims are preempted by the federal Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.* (1990), and moved to dismiss the complaint. Plaintiffs seek to remand their case to state court or, in the alternative, to amend their complaint to state a federal cause of action.

The facts are largely undisputed. In January of 1989, corporate plaintiff Cook, through its officer, plaintiff Janis Smith, entered into a written "personal financial planning contract" whereby corporate defendant Cigna, through its agent defendant Charles Sauberan, agreed to provide Cook with planning services. The contract provides:

1. GENERAL PURPOSE.

By this contract, you engage Advisor to provide personal financial planning services, as described below, and Advisor agrees to provide these services.

2. SERVICES TO BE PROVIDED.

During the initial year of this contract Advisor will provide planning services summarized by a written plan for you which reflects your current financial circumstances, your financial outlook and your personal objectives. Your plan will include the items checked below:

X Estate Planning
X Business Continuity Planning
X Fringe Benefit Planning
X Income Tax and
   Investment Planning

3. PLANNING WILL FOLLOW THIS PROCESS.

In creating your plan, you and Advisor will follow this process:

a. Data: You will provide Advisor with comprehensive data concerning your current and prospective financial and personal circumstances.

b. Objectives: Advisor will help you determine specific financial objectives, taking into account such matters as current and anticipated income and income tax levels, investment and non-investment assets, anticipated cash flow, and your investment risk tolerance, as well as the role your family situation, fringe benefits, and your business interest(s), if any, play in meeting these objectives.

c. Financial Plan: On the basis of the data you provide and the objectives chosen, Advisor will design a personal

financial plan summarized in written form.

4. COMPENSATION TO ADVISOR FOR PLANNING SERVICES.

For the financial planning services described above, you agree to pay a fee of $3,000.00.

Item 1, Exhibit A.

Pursuant to step 3, the plaintiffs informed Cigna that Cook's corporate income and cash flow fluctuate from year to year and that Cook therefore required flexibility in making contributions to a retirement plan. Item 1, Ex. A, ¶ 12. Sauberan advised the plaintiffs to establish a defined benefit pension plan and to fund the plan with whole life insurance policies on the lives of Cook's employees. *Id.*, ¶¶ 14–15. At the time, Cook only employed three or four people, including the plaintiff, Janis R. Smith. Oral Argument, Feb. 13, 1995. The plaintiffs authorized the defendants to create such a plan and to fund it with such insurance policies, to be issued by Connecticut General. *Id.*, ¶ 16.

Connecticut General issued the insurance policies on June 1, 1989, and they remained in the defendants' possession for more than two years.[1] On July 29, 1991, the plaintiffs received a copy of the policies, and on August 1, 1991, the plaintiffs returned these materials to the defendants, requesting a full refund of the premiums paid thereon. *Id.*, ¶ 36. The policies included the following provision:

Right to Examine Policy—the policy may be returned to the insurance agent through whom it was purchased or to the Company within 10 days after its receipt (20 days after its receipt where required by law for policies issued in replacement of other insurance). If the policy is so returned, it will be deemed void from the Date of Issue, and the Company will refund the premium paid.

*Id.*, ¶ 35. The defendants refused to refund the requested premiums.

The plaintiffs commenced this action in the Supreme Court of the State of New York, County of Orleans, in December of 1993, alleging six common law claims: breach of the financial planning contract, negligence, negligent misrepresentation, breach of the terms of the insurance policies, fraudulent misrepresentation, and negligent supervision. The defendants removed the case to the United States District Court for the Western District of New York on January 5, 1994, on the ground that ERISA preempts the plan, and filed a motion to dismiss the complaint for failure to state a cognizable federal cause of action.

The plaintiffs then filed a motion to remand on the ground that ERISA does not preempt the state common law claims set forth in their complaint. If ERISA preempts the plaintiffs' state claims, 28 U.S.C. § 1331 (providing federal district courts with jurisdiction over federal questions) and 29 U.S.C. § 1132(e) (providing federal district courts with original jurisdiction over ERISA claims) would apply, requiring removal to federal district court. However, if ERISA does not preempt the plaintiffs' state claims, no federal jurisdiction would exist under either statute, and the case would have to be remanded to state court.

## DISCUSSION

### ERISA does not preempt defendant's state law claims.

■ Under 28 U.S.C. § 1441, a defendant may remove a civil action filed in state court to federal district court if the district court has original subject matter jurisdiction over the plaintiff's claim. The well-pleaded complaint rule limits the search for federal court jurisdiction to " 'what necessarily appears in the plaintiff's statement of his own claim in the bill or declaration, unaided by anything alleged in anticipation or avoidance of defenses which it is thought the defendant may interpose.' " *Lupo v. Human Affairs International, Inc.*, 28 F.3d 269, 272 (2d Cir.1994), quoting *Taylor v. Anderson*, 234 U.S. 74, 75–76, 34 S.Ct. 724, 724–25, 58 L.Ed. 1218 (1914). "One corollary of the well-pleaded complaint rule . . ., however, is that Congress may so completely pre-empt a particular area that any civil complaint raising this select group of claims is necessarily federal in char-

---

1. No explanation has been provided for this lengthy delay.

acter." *Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 63–64, 107 S.Ct. 1542, 1546–47, 95 L.Ed.2d 55 (1987). In *Metropolitan Life,* the Supreme Court held that Congress had manifested a clear intent to make causes of action within the scope of ERISA's civil enforcement provisions removable to federal court. *Id.* Congress deemed preemption necessary to ensure "the advantages of a uniform set of procedures governed by a single set of regulations." *Fort Halifax Packing Co. v. Coyne,* 482 U.S. 1, 11, 107 S.Ct. 2211, 2217, 96 L.Ed.2d 1 (1987).

■ There is, however, no bright-line test for determining whether a state law claim is preempted by ERISA. Section 514(a) of ERISA reads:

> Except as provided in subsection (b) of this section, the provisions of [ERISA] shall supersede any and all State laws insofar as they may now or hereafter *relate to* any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title.

29 U.S.C. § 1144(a) (1994) (emphasis added). In *Ingersoll–Rand v. McClendon,* 498 U.S. 133, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990), the Court explained that

> [a] law "relates to" an employee benefit plan ... if it has a connection with or reference to such a plan. Under this "broad common-sense meaning," a state law may "relate to" a benefit plan, and thereby be pre-empted, even if the law is not specifically designed to affect such plans, or the effect is only indirect.

*Id.* at 139, 111 S.Ct. at 483 (citations omitted). The *Ingersoll–Rand* Court found that a plan participant's state law wrongful discharge claim against his former employer was preempted by ERISA because the plaintiff alleged that he was fired to prevent attainment of benefits due under an ERISA plan. When "the existence of a pension plan is a critical factor in establishing liability" (*id.* at 139–40, 111 S.Ct. at 483–84) under the state law or the state cause of action conflicts directly with an ERISA cause of action, the state law claim is preempted. *Id.* at 142, 111 S.Ct. at 484.

■ However, preemption does not occur if "the state law has only a 'tenuous, remote, or peripheral' connection with covered plans, as is the case with many laws of general applicability." *District of Columbia v. Greater Washington Bd. of Trade,* — U.S. —, — n. 1, 113 S.Ct. 580, 583 n. 1, 121 L.Ed.2d 513 (1992), *quoting Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 100, n. 21, 103 S.Ct. 2890, 2901, n. 21, 77 L.Ed.2d 490 (1983); *Mackey v. Lanier Collection Agency & Service, Inc.,* 486 U.S. 825, 830–38 n. 12, 108 S.Ct. 2182, 2185–90 n. 12, 100 L.Ed.2d 836 (1988).

■ The defendants contend that the *Ingersoll* standard mandates preemption in the instant case because the plaintiffs' state law claims implicate the existence, structure, and design of an ERISA plan. *See Smith v. Dunham–Bush, Inc.,* 959 F.2d 6, 10 (2d Cir. 1992) (plan participant's allegation that his employer breached an oral promise to increase his benefits over those normally provided by the ERISA plan is inseparably connected to a determination of liability under state law). The defendants assert that Cook's allegations of improper plan design and failure to comport with specifications challenge the existence or adequacy of benefits payable under the plan. They claim a challenge involving a plan's funding necessarily is a challenge to plan benefits as amounts to be paid out are determined in large part by the timing, structure, and quantity of what is paid into a plan. Item 11 at 7.

The defendants further argue that a claim against a plan provider for failing to meet the plaintiffs' needs directly relates to an ERISA plan. In *Bartholet v. Reishauer A.G. (Zurich),* 953 F.2d 1073 (7th Cir.1992), a plan participant's state law claims against his employer were preempted because he sought damages amounting to the difference between the pension he was promised and that established by an ERISA plan. As in the present case, *Bartholet* claimed that the defendant breached a contract to provide a certain pension plan.

Plaintiffs argue that *Bartholet,* as well as most of the other cases cited by the defendants, was brought by a plaintiff seeking benefits under a plan. Here, plaintiffs are

plan sponsors suing a non-fiduciary who allegedly violated a financial planning contract to provide a suitable ERISA plan. The plaintiffs contend that their claims do not "relate to" the ERISA plan within *Ingersoll–Rand*'s meaning because they do not seek recovery of benefits nor challenge the plan directly. Item 9 at 7. Although they concede that the pension plan's creation is material and relevant to determining their claims, they contend that the plan remains sufficiently collateral to not invoke preemption. Item 5, ¶¶ 5, 10, 14; Item 9 at 13.

As support for this contention, plaintiffs cite *Hayes v. National Con–Serv. Inc.*, 523 F.Supp. 1034 (D.C.M.D.1981). Therein, three employees alleged that their employer breached their employment contracts by not creating a qualified pension plan. The court found no preemption because the plaintiffs did not allege violation of ERISA or a rule promulgated pursuant to ERISA with respect to an existing plan and did not seek benefits wrongfully withheld under an existing plan. In addition, the court found that ERISA issues did not so pervade and underlie the claims as to cause them to arise under ERISA.

The defendants respond that the fact that the plaintiffs are not seeking benefits under a plan is not controlling. The *Ingersoll–Rand* court addressed this question and found that "there is no basis in § 502(a)'s language [providing the right to civil enforcement] for limiting ERISA actions to only those which seek 'pension benefits.'" *Ingersoll–Rand*, 498 U.S. at 145, 111 S.Ct. at 486. Section 502(a) provides that:

> (a) A civil action may be brought—(1) by a participant or beneficiary—(A) for the relief provided for in subsection (c) of this section, or (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan; (2) by the Secretary, or by a participant, beneficiary

or fiduciary for appropriate relief under section 1109 [breach of fiduciary duty][.]

29 U.S.C. § 1132(a).

Plaintiff's argument is more persuasive. A suit in state court by beneficiaries of a plan, based on alleged deficiencies in the benefits the plan provides, is clearly preempted by ERISA. When, however, the plan itself sues a service provider over the quality of the service, as it does in the present case, that transaction may be too remote from the purpose of the ERISA regulatory scheme to warrant preemption.

This distinction is supported by the analysis of the Ninth Circuit Court of Appeals in *Gen. Am. Life Ins. Co. v. Castonguay*, 984 F.2d 1518 (9th Cir.1993).[2] In *Castonguay*, which was briefed by neither party, the court developed a guideline based on the relationship between the parties to determine whether the preemption operates:

> The key to distinguishing between what ERISA preempts and what it does not lies, we believe, in recognizing that the statute comprehensively regulates certain *relationships:* for instance, the relationship between plan and plan member, between plan and employer, between employer and employee (to the extent an employer benefit plan is involved), and between plan and trustee. Because of ERISA's explicit language and because state laws regulating these relationships (or the obligations flowing from these relationships) are particularly likely to interfere with ERISA's scheme, these laws are presumptively preempted.
>
> But ERISA doesn't purport to regulate those relationships where a plan operates just like any other commercial entity—for instance, the relationship between the plan and its own employees, or the plan and its insurers or creditors, or the plan and the landlords from whom it leases office space. State law is allowed to govern these relationships, because it's much less likely to disrupt the ERISA scheme than in other situations....

*NYNEX Service Co.*, 838 F.Supp. 769, 790 (S.D.N.Y.1993).

**2.** The *Castonguay* relationship analysis has been cited by one Second Circuit court, in *Ludwig v.*

To determine whether a state law is preempted we must look at whether it encroaches on the relationships regulated by ERISA.

984 F.2d 1518, 1521–22 (emphasis in original, citations and footnote omitted).

A number of other courts have come to the same conclusion: the relationship between a plan and its insurer is not preempted by ERISA. *See, e.g., Hospice of Metro Denver, Inc. v. Group Health Ins. of Oklahoma Inc.,* 944 F.2d 752, 756 (10th Cir.1991) ("Denying . . . a state law action based upon misrepresentation by the plan's insurer in no way furthers the purposes of ERISA."); *Memorial Hosp. Sys. v. Northbrook Life Ins. Co.,* 904 F.2d 236, 250 (5th Cir.1990) (ERISA did not preempt a hospital's state law claim against an insurer's negligent misrepresentation of a plan beneficiary's coverage because the claim did not relate to the terms or conditions of a welfare plan and only tangentially affected its ongoing administration.)

In addition, the fact that plaintiff Smith, a corporate officer of Cook, was also a beneficiary of the plan is not dispositive. A recent Second Circuit decision found no preemption of a state claim by a plan participant against a third-party physician for professional malpractice, breach of fiduciary duty, and intentional infliction of emotional distress. *Lupo,* 28 F.3d 269. The defendant in that case had contracted with the plaintiff's employer to provide psychotherapy services as a plan benefit. The court found that ERISA did not preempt any of the claims because none bore "any significant resemblance to those described in § 1132(a)(1)(B) [ERISA § 502(a)]." *Id.* at 272.

Taken with the related cases cited above, the *Castonguay* analysis supports the plaintiff's position. The relationship between the parties in the present case is more analogous to the relationship between the plan and its insurers than to the plan and its sponsoring employer, beneficiaries, or trustees. The fundamental role of an insurer is to fund the plan and insulate the plan's assets from risk. Fulfilling that role necessarily implicates the existence, structure, and design of an ERISA plan, but can be governed by state law, ac-

cording to *Castonguay,* because it is less likely to disrupt the ERISA scheme. *Id.*

Similarly, the role of the defendant in the present case implicated the structure of an ERISA plan without encroaching on the scope of ERISA. Defendant Sauberan advised plaintiffs to establish a defined benefit pension plan and to fund the plan with whole life insurance policies on the lives of Cook's employees. The plaintiffs authorized the defendants to create such a plan and to fund it with such insurance policies, to be issued by defendant Connecticut General. In this respect, defendant Sauberan acted essentially as an insurance broker to plaintiff's ERISA plan; he was responsible for funding the plan and insulating its assets from risk.

Moreover, defendant's construction of ERISA Section 502(a) is not persuasive. Although section 502(a) does not limit the actions preempted by ERISA so narrowly that anyone not seeking pension benefits may bring a valid state claim, *Ingersoll–Rand,* 498 U.S. at 145, 111 S.Ct. at 486, the statute does not extend so broadly as to preempt the present action against the plan's insurer. *Castonguay,* 984 F.2d 1518, 1521–22.

Therefore, applying *Castonguay* and related cases to the present case, the regulation of the relationship between plaintiff and defendant does not encroach on ERISA, and claims resulting from the relationship are not preempted.

## CONCLUSION

Plaintiff's motion to remand the case to state court is granted.

So ordered.