507 S.E.2d 367

**MARTIN OIL COMPANY, a West Virginia Corporation,**
Appellee,

v.

**PHILADELPHIA LIFE INSURANCE COMPANY, a Corporation,**
Appellant,

**Professional Benefits Consultants, Inc., a Corporation, Appellee.**

No. 23813.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 10, 1997.

Decided Dec. 8, 1997.

Charles G. Johnson, Marcia Allen Broughton, Simmerman & Broughton, Clarksburg, West Virginia, Attorneys for Appellee Martin Oil.

Anita R. Casey, Christopher J. Pyles, Meyer, Darragh, Buckler, Bebenek & Eck, Charleston, West Virginia, Attorneys for Professional Benefits.

C. David Morrison, Michael J. Florio, Steptoe & Johnson, Clarksburg, West Virginia, Attorneys for Philadelphia Life.

WORKMAN, Chief Justice:

Philadelphia Life Insurance ("PLI") appeals from the Circuit Court of Upshur County's decision prohibiting it from asserting a cross-claim against co-defendant Professional Benefits Consultants ("PBC") and a third-party complaint against non-party Rudolph Pellegrini under principles of implied indemnity. PLI also challenges the circuit court's decision not to dismiss this case, arguing that federal jurisdiction is preemptive given the references to an ERISA[1] plan in the underlying case. After a thorough review of the record and the law in this area, we affirm the lower court's finding that preemption was not required and we affirm the lower court's decision prohibiting PLI from amending its pleadings.

In 1972, Martin Oil, the plaintiff in the underlying case, decided to establish a retirement plan for its employees. Martin Oil used the services of PLI to set up its ERISA plan. PLI's status was that of a third-party administrator with reference to the Martin Oil pension plan. It appears that PLI's employee, Rudolph Pellegrini, was the individual who actually handled the third-party administration of the Martin Oil plan.[2] In June 1983 when it decided that it wanted to get out of the business of pension plan administration, PLI purportedly mailed letters to its clients informing them of its decision[3] and recommending that they retain Mr. Pellegri-

ni to handle their accounts. In August 1983, Mr. Pellegrini left PLI and incorporated PBC, naming himself as president. The parties agree that Mr. Pellegrini took the Martin Oil file with him when he started PBC.

In 1985, Martin Oil decided to terminate its pension plan, which was now being serviced by PBC. When Martin Oil informed PBC of its desire to terminate the plan, PBC recommended that Martin Oil hire an accountant to terminate the plan. In attempting to terminate the plan, Martin Oil's accountant discovered that he did not have sufficient financial information to effect the termination.[4] After incurring substantial expense, Martin Oil ultimately terminated its pension plan in October 1991.[5]

On July 31, 1992, Martin Oil filed a complaint in circuit court against PLI and PBC to recover the costs associated with the plan's termination. In the complaint, Martin Oil alleged that PLI and PBC are liable to it for breach of contract.[6] Martin Oil entered into a settlement agreement with PBC and Mr. Pellegrini on October 27, 1995. The remaining defendant, PLI, filed a motion on November 30, 1995, seeking leave to file an amended answer and cross-claim against PBC and a third-party complaint against Mr. Pellegrini, individually. By order dated February 27, 1996, the circuit court dismissed PBC with prejudice and denied PLI's motions to file additional pleadings. PLI seeks a reversal of that order, as well as a ruling from this Court that the state court's jurisdiction over this matter is preempted under federal law.[7]

1. ERISA refers to the federal Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001 to 1461 (1994).

2. The ERISA plan document lists Martin Oil as the plan administrator.

3. Carl Martin, Martin Oil's president, claims to have been unaware of the transfer of his pension plan account from PLI to PBC.

4. To accomplish the termination of an ERISA plan, financial information covering a five-year period is apparently required. When Mr. Pellegrini left PLI to start PBC, he only took what is referred to as the "active" Martin Oil file, which contained the most recent two years of information pertaining to the account along with copies of the pension plan, any amendments to the plan, and any pertinent corporate resolutions. The

"inactive" account information was ultimately destroyed when PBC moved to a new location in 1991.

5. Martin Oil agrees that all of its pension plan beneficiaries received the entirety of the pension funds to which they were entitled.

6. Although Martin Oil alleged in its complaint that it entered into a contract with PLI "to establish and administer" a pension plan, the company president testified during discovery that no such contract was ever prepared, according to his recollection.

7. Both PLI and PBC filed motions to dismiss the state court action based on federal preemption and statute of limitations. These motions were denied by order dated January 24, 1995, but the order fails to state the bases for the denial.

## I.

### PREEMPTION

■ PLI argues that the jurisdictional language of ERISA, which provides that ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan ... [,]"[8] requires that this matter be heard in federal court. 29 U.S.C. § 1144(a) (1994). Based on the expansive judicial interpretation given to the terms "relate to," PLI maintains that federal jurisdiction is mandated. *Id.* PBC takes no position with regard to the issue of preemption and Martin Oil argues that its breach of contract claims are not preempted by ERISA.

As support for its position that the terminology "relate[s] to" must be viewed expansively, PLI cites the United States Supreme Court's observation in *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987), that this phrase conveys " 'its broad common-sense meaning, such that a state law "relates to" a benefit plan "in the normal sense of the phrase if it has a connection with or reference to such a plan." ' " *Id.* at 47, 107 S.Ct. 1549 (quoting *Metropolitan Life Ins. Co. v. Massachusetts,* 471 U.S. 724, 739, 105 S.Ct. 2380, 85 L.Ed.2d 728 (1985), quoting *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 97, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983)). Despite the historically broad interpretation of the relevant statutory language, it has been consistently recognized that state laws or actions that affect a pension plan in "too tenuous, remote or peripheral a manner" are not preempted by ERISA. *Shaw,* 463 U.S. at 100, n. 21, 103 S.Ct. 2890; *accord Hollingsworth Paving, Inc. v. Jefferson–Pilot Life Ins. Co.,* 929 F.Supp. 1097, 1100 (W.D.Tenn.1996); *Ball v. Life Planning Servs., Inc.,* 187 W.Va. 682, 421 S.E.2d 223 (1992) (finding that state law imposing liability on unlicensed insurance brokers had too tenuous an effect on ERISA plan to require preemption).

■ While the seemingly ubiquitous issue of ERISA preemption has resulted in diverse rulings depending on the deciding tribunal's application of the "relate to" jurisdictional language, certain generalizations can be made with regard to when preemption is and is not required. Where the state law claim seeks the recovery of ERISA benefits, there is no dispute that such claim affects the plan and therefore preemption is necessary. *See Cromwell v. Equicor–Equitable HCA Corp.,* 944 F.2d 1272, 1276 (6th Cir.1991), *cert. dismissed,* 505 U.S. 1233, 113 S.Ct. 2, 120 L.Ed.2d 931 (1992) (finding preemption where health care provider sued plan administrator seeking recovery of plan benefits). Similarly, those cases in which the state law claim involves "some aspect of the distribution, processing or entitlement of benefits or administration of claims or funds under a[n] [ERISA] plan[,]" typically are determined to be preempted by federal law. *Hollingsworth Paving,* 929 F.Supp. at 1101; *see also Metropolitan Life Ins. Co. v. Pressley,* 82 F.3d 126, 129 (6th Cir.1996), *cert. denied sub nom. Pressley v. Pressley,* 520 U.S. 1263, 117 S.Ct. 2431, 138 L.Ed.2d 193 (1997) (commenting that state laws relating to designation of beneficiaries are preempted when an ERISA plan is involved); *Tri–State Mach., Inc. v. Nationwide Life Ins. Co.,* 33 F.3d 309 (4th Cir.1994), *cert. denied,* 513 U.S. 1183, 115 S.Ct. 1175, 130 L.Ed.2d 1128 (1995) (holding that ERISA preempted state law claim brought by employer against insurance company for wrongful claims processing). In addition to the nature of the claim, the identity of the parties is a critical factor when resolving the issue of preemption. In the prototypical preemption case, as the court observed in *Hollingsworth Paving,* the parties involved will be "employees or former employees, who challenge some aspect of their status as beneficiaries under a plan." 929 F.Supp. at 1101. Other parties who may be included in a case where preemption is required are the employer, the plan, and the plan fiduciaries. *See Firestone Tire & Rubber Co. v. Neusser,* 810 F.2d 550, 556 (6th

---

**8.** Exempted from this preemption provision are state laws that regulate insurance, banking, or securities, as well as state criminal laws. *See Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 91, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983) (citing 29 U.S.C. § 1144(b)(2)(A), (b)(4)). For ERISA purposes, the term "state laws" refers to "all laws, decisions, rules, regulations, or other State action having the effect of law, of any State." 29 U.S.C. § 1144(c)(1).

Cir.1987); *General Am. Life Ins. Co. v. Castonguay*, 984 F.2d 1518, 1521 (9th Cir.1993) (stating that "the key to distinguishing between what ERISA preempts and what it does not lies ... in recognizing that the statute [ERISA] comprehensively regulates certain *relationships:* for instance, the relationship between plan and plan member, between plan and employer, between employer and employee (to the extent an employee benefit plan is involved), and between plan and trustee").

■ PLI's preemption argument rests entirely on the broad interpretation given to the jurisdictional terms "relate to." 29 U.S.C. § 1144(a). According to PLI, the mere reference to the Martin Oil pension plan in the instant case requires preemption. Yet, this is far from true, as the mere incidental reference or effect of state laws on an ERISA plan does not provide the requisite basis for preemption. *See Aetna Life Ins. Co. v. Borges*, 869 F.2d 142, 146–47 (2nd Cir.), *cert. denied*, 493 U.S. 811, 110 S.Ct. 57, 107 L.Ed.2d 25 (1989) (stating that "[w]hat triggers ERISA preemption is not just any indirect effect on administrative procedures but rather an effect on the primary administrative functions of benefit plans, such as determining an employee's eligibility for a benefit and the amount of that benefit"); *see also Thiokol Corp. v. Roberts*, 858 F.Supp. 674, 683–84 (W.D.Mich.1994), *aff'd*, 76 F.3d 751 (1996), *cert. denied sub nom. Thiokol Corp. v. Revenue Div'n, Dep't of Treasury*, 520 U.S. 1271, 117 S.Ct. 2448, 138 L.Ed.2d 206 (1997) (holding that preemption was not required because Michigan's Single Business Tax had only an incidental effect on ERISA plans despite fact that tax was calculated based on plan contributions); *accord Provience v. Valley Clerks Trust Fund*, 509 F.Supp. 388, 391 (E.D.Cal.1981) (holding that "where the state law has only an indirect effect on the plan *and* where it is one of general application which pertains to an area of important state concern, the court should find there has been no preemption").

Given the dearth of West Virginia law on this issue,[9] we find the district court's approach in *Hollingsworth Paving* instructive to the issue of preemption before us. In that case, the plan administrator sued the life insurance carrier for breach of fiduciary duty, alleging that the carrier's salesman altered the nature of the pension plan by soliciting waivers from affected employees which increased the carrier's commissions, increased the employer's contributions for highly compensated employees, and barred the signing employees from registering under the plan. 929 F.Supp. at 1098. In analyzing whether preemption was required, the court adopted the following considerations previously identified by the Sixth Circuit Court of Appeals as relevant:

(1) whether the state law represents a traditional exercise of state authority; (2) whether the parties involved are principal ERISA parties such as the employer, the plan, the plan fiduciaries, and the beneficiaries, or, in contrast, whether the parties are outside parties; and (3) whether the state law's effect on an ERISA plan is incidental.

929 F.Supp. at 1100 (quoting *Firestone*, 810 F.2d at 555–56). Before applying those factors to the facts of *Hollingsworth Paving*, the district court first determined the specific nature of the claim involved: "The present matter involves no issues of distribution, receipt, denial, or billing of benefits. Rather, it involves a contract for a service. *The fact that the service is a plan is insufficient to bring it under ERISA.*" 929 F.Supp. at 1102 (emphasis supplied). The court then determined "that the first [*Firestone*] factor weighs against preemption, as state claims arising under contract law are traditionally resolved by state courts." *Id.* As to the second *Firestone* factor, the district court concluded that the carrier was neither a fiduciary or any other principal ERISA entity. *Id.* Applying the final factor, the court found that "resolution of the contract claim will impact necessary contributions from employees, but it will not impact the nature of benefits distributed, or the process and

---

**9.** Neither has the Fourth Circuit Court of Appeals developed a particular test or standard to apply when resolving "whether a state law or

state claim 'relates to' and ERISA plan." *All Risks, Ltd. v. Equitable Life Assurance Soc'y of United States*, 931 F.Supp. 409, 417 (D.Md.1996).

terms of their distribution." *Id.* Based on these findings, the *Hollingsworth Paving* court held that the contract claim against the carrier was not preempted under ERISA. *Id.*

In the analogous case of *Cook Wholesale of Medina, Inc. v. Connecticut General Life Insurance Co.,* 898 F.Supp. 151 (W.D.N.Y. 1995), the ERISA plan sponsors sued the plan's insurance companies and their representatives for breach of a financial planning contract,[10] which required the companies to provide a suitable ERISA plan. *Id.* at 152–53. The argument for preemption in *Cook* was based on the fact that "the plaintiffs' state law claims implicate[d] the existence, structure, and design of an ERISA plan." *Id.* at 154. The *Cook* court reasoned:

A suit in state court by beneficiaries of a plan, based on alleged deficiencies in the benefits the plan provides, is clearly preempted by ERISA. *When, however, the plan itself sues a service provider over the quality of the service, as it does in the present case, that transaction may be too remote from the purpose of the ERISA regulatory scheme to warrant preemption.*

. . . "The key to distinguishing between what ERISA preempts and what it does not lies, we believe, in recognizing that the statute comprehensively regulates certain *relationships:* for instance, the relationship between plan and plan member, between plan and employer, between employer and employee (to the extent an employer benefit plan is involved), and between plan and trustee. Because of ERISA's explicit language and because state laws regulating these relationships (or the obligations flowing from these relationships) are particularly likely to interfere with ERISA's scheme, these laws are presumptively preempted.

*But ERISA doesn't purport to regulate those relationships where a plan operates just like any other commercial entity*—for instance, the relationship between the plan and its own employees, or the plan and its insurers or creditors, or the plan and the landlords from whom it leases office space. *State law is allowed to govern these relationships because it's much less likely to disrupt the ERISA scheme than in other situations."*

*Id.* at 155 (quoting *Castonguay,* 984 F.2d at 1521–22) (emphasis supplied). The district court concluded that the carrier's representative "acted essentially as an insurance broker to plaintiff's ERISA plan" and that "the relationship between a plan and its insurer is not preempted by ERISA." 898 F.Supp. at 156. Critical to this ruling was the court's determination that "the structure of an ERISA plan [was implicated] without encroaching on the scope of ERISA." *Id.*

The approaches taken by the courts in *Hollingsworth Paving* and *Cook* were validated by several recent United States Supreme Court decisions. In its most recent opinion on the issue of preemption, *De Buono v. NYSA–ILA Medical and Clinical Services Fund,* 520 U.S. 806, 117 S.Ct. 1747, 138 L.Ed.2d 21 (1997), the Court commented "[i]n our earlier ERISA pre-emption cases, it had not been necessary to rely on the expansive character of ERISA's literal language in order to find pre-emption because the state laws at issue in those cases had a clear 'connection with or reference to,' ERISA benefit plans." *Id.* at 1751, 117 S.Ct. 1747 (quoting *Shaw,* 463 U.S. at 96–97, 103 S.Ct. 2890) (citation omitted). Discussing its recent decision in *New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Insurance Co.,* 514 U.S. 645, 115 S.Ct. 1671, 131 L.Ed.2d 695 (1995), the Supreme Court referenced its "unequivocal[ ] conclu[sion]" in *Travelers* that "ERISA's 'relates to' language was [not] intended to modify '*the starting presumption that Congress does not intend to supplant state law.*' " *De Buono,* 520 U.S. at 813, 117 S.Ct. at 1751 (quoting, in part, *Travelers,* 514 U.S. at 654, 115 S.Ct. 1671) (emphasis supplied). Emphasizing that its " 'prior attempt[s] to construe the phrase "relate to," d[o] not give us much help' " in solving the issue of whether New York's state tax on gross receipts of health

---

**10.** The state law claims also included negligence, negligent misrepresentation, breach of the terms of the insurance policies, fraudulent misrepresentation, and negligent supervision. 898 F.Supp. at 153.

care facilities operated by a trust fund that administered ERISA plans was preempted, the Court stated in *De Buono:*

> In order to evaluate *whether the normal presumption against pre-emption has been overcome in a particular case*, we concluded [in *Travelers* ] that we "must go beyond the unhelpful text and the frustrating difficulty of defining its key term, and look instead to the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive."

520 U.S. at 813, 117 S.Ct. at 1751 (quoting *Travelers,* 514 U.S. at 655–56, 115 S.Ct. 1671) (emphasis supplied). Continuing its preemption analysis the Supreme Court explained that because "the historic police powers of the State include the regulation of matters of health and safety[,]" "Respondents therefore bear the considerable burden of overcoming 'the starting presumption that Congress does not intend to supplant state law.'" *De Buono,* 520 U.S. at 814, 117 S.Ct. at 1751–52 (quoting *Travelers,* 514 U.S. at 654, 115 S.Ct. 1671). Commenting that *De Buono* "is not a case in which New York has forbidden a method of calculating pension benefits that federal law permits, or required employers to provide certain benefits" or one in which "the existence of a pension plan is a critical element of a state law cause of action[11] or one in which the state statute contains provisions that expressly refer to ERISA or ERISA plans," the Supreme Court concluded that the New York law at issue "is one of 'myriad state laws' of general applicability that impose some burdens on the administration of ERISA plans but nevertheless do not 'relate to' them within the meaning of the governing statute." 520 U.S. 806, 117 S.Ct. at 1752 (quoting *Travelers,* 514 U.S. at 668, 115 S.Ct. 1671 and 29 U.S.C. § 1144(a)) (footnotes omitted).

State laws of general applicability, such as tort or contract, as well as those actions that involve "garden variety" commercial disputes are frequently determined to be beyond the reach of the preemption clause. *Fox, Curtis & Assocs., Inc. v. Employee Benefit Plans, Inc.,* No. 92 C 5828, 1993 WL 265474 at *4 (N.D.Ill.1993). In *Mackey v. Lanier Collection Agency & Service, Inc.,* 486 U.S. 825, 108 S.Ct. 2182, 100 L.Ed.2d 836 (1988), the United States Supreme Court held that ERISA did not preempt Georgia's general garnishment statute despite the statute's use to collect judgments against plan participants. *Id.* at 831, 108 S.Ct. 2182. Discussing the statutory provision for suits against ERISA plans, the Court observed that claims "against ERISA plans for run-of-the-mill state-law claims such as unpaid rent, failure to pay creditors, or even torts committed by an ERISA plan ... are not pre-empted by ERISA." *Id.* at 833, 108 S.Ct. 2182 (footnote omitted). In *Fox,* the plan fiduciary brought suit against the plan's administrator and insurer for violating the terms of the written agreement under which the ERISA plan was to be administered. Analogizing the contractual dispute at issue to "a 'garden variety' commercial dispute," the district court found no basis for preemption and observed that "[w]hile Congress intended to place the regulation of benefit plans squarely within the purview of ERISA, it did not intend to regulate all aspects of contractual relationships tangential to an ERISA plan." *Fox,* slip op. at *4, 5. In those instances where "[s]tate law govern[s] relationships in which an ERISA plan operates like 'any other commercial entity' as, for example, 'the relationship between the plan and its own employees, or the plan and its insurers or creditors, or the plan and the landlords from whom it leases office space,'" the *Fox* court concluded that preemption should not apply. *Id.* at *4 (quoting *Castonguay,* 984 F.2d at 1522). Addressing the argument that involvement of an ERISA plan in the litigation required preemption, the *Fox* court opined: "The extent to which the plan documents will have to be reviewed in adjudicating the merits of EBTEK's

---

**11.** This refers to *Ingersoll–Rand Co. v. McClendon,* 498 U.S. 133, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990), in which the Supreme Court determined that preemption was required because under the Texas law at issue, the plaintiff had to prove the existence of an ERISA plan combined with his/her termination being motivated by the employer's desire to reduce its pension payments. The Supreme Court also found that the Texas law conflicted with ERISA because it provided for a remedy for the violation of a right expressly addressed by ERISA.

[plaintiff fiduciary] claims, if at all, is merely ancillary to an examination of the terms of the agreement between EBTEK and Defendants." *Fox,* slip op. at *5.

The Fourth Circuit Court of Appeals determined in *Pizlo v. Bethlehem Steel Corp.,* 884 F.2d 116 (4th Cir.1989), that state law claims for breach of contract, promissory estoppel, and negligent misrepresentation were not preempted where the plaintiffs' claims stemmed from an alleged wrongful termination. *Id.* at 120. The court observed in *Pizlo* that while the plaintiffs' damages would be measured in part by the lost pension benefits, "the pension trust itself would not be liable and the administrators of the pension plan would not be burdened in any way." *Id.* at 120–21. The court further noted that the claims involved would not submit the employer to " 'conflicting employer obligations and variable standards of recovery', 'determine whether any benefits are paid' nor 'directly affect the administration of benefits under the plan.' " *Id.* at 120 (quoting *Sorosky v. Burroughs Corp.,* 826 F.2d 794, 800 (9th Cir.1987)).

■ Critical to any determination of preemption is the issue of Congressional intent. *Pilot Life,* 481 U.S. at 45, 107 S.Ct. 1549 (quoting *Allis–Chalmers Corp. v. Lueck,* 471 U.S. 202, 208, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985)). Much has been written about the purpose of ERISA:

> Congress enacted ERISA's comprehensive preemption provision to "eliminat[e] the threat of conflicting or inconsistent State and local regulation of employee benefit plans." *Shaw,* 463 U.S. at 98, 103 S.Ct. at 2901. (quoting the comments of Senator Williams, 120 Cong.Rec. at 29933). Recognizing that it would be difficult for an employer to establish a uniform scheme to administer employee benefit plans "if ... [the] plan [was] subject to differing regulatory requirements in differing States," *Fort Halifax Packing Co. v. Coyne,* 482 U.S. 1, 9, 107 S.Ct. 2211, 2216, 96 L.Ed.2d 1, (1987), Congress enacted ERISA's preemption provision " 'to minimize [state regulatory] interference with the administration of employee benefit plans,' so that employers would not have to

'administer their plans differently in each State in which they have employees ...' " *Id.* at 10, 107 S.Ct. at 2217 (quoting *Shaw,* 463 U.S. at 105, 103 S.Ct. at 2904). "Preemption ensures that the administrative practices of a benefit plan will be governed by only a single set of regulations." *Id.* 482 U.S. at 11, 107 S.Ct. at 2217.

*All Risks, Ltd. v. Equitable Life Assurance Soc'y of United States,* 931 F.Supp. 409, 417 (D.Md.1996).

Applying these principles of congressional intent to the instant case, we first must examine the exact nature of the underlying case. The complaint is styled as a breach of contract case and was clearly brought, not in connection with any failure to administer an ongoing ERISA plan, but to recoup the costs Martin Oil incurred when it encountered difficulty in accumulating the necessary information to enable it to terminate the plan. The pension plan no longer exists and did not exist at the time the underlying civil action was initiated. The parties are in agreement that all the beneficiaries under the plan have received their full benefits and accordingly, this lawsuit will in no way affect the plan's beneficiaries. The only issue to be resolved by the underlying claim is whether Martin Oil is entitled to be reimbursed for the costs it incurred in terminating the company's pension plan.

■ At the heart of Martin Oil's ability to recover its termination costs is the contractual arrangement reached between Martin Oil and PLI. Whatever obligations PLI had to Martin Oil with regard to the pension plan are controlled by that contractual arrangement. The parties have not cited to any ERISA provision that governs what PLI's obligations to Martin Oil were. This is because PLI's status is that of a third-party non-fiduciary, and ERISA does not control such arrangements. It is between the company and the third-party administrator to reach their own agreement regarding who will handle the necessary financial accountings. Unfortunately for Martin Oil, it appears that this arrangement was not reduced to writing. That failure does not, however, invoke ERISA jurisdiction. Neither does the mere inclusion of reference to an ERISA plan within a civil action constitute sufficient

basis for preemption. Following the United States Supreme Court's recent pronouncements in this area, we hold that a party seeking preemption under the jurisdictional provision of ERISA, 29 U.S.C. § 1144(a), must first overcome " 'the starting presumption that Congress does not intend to supplant state law.'" *De Buono,* 520 U.S. at 813, 117 S.Ct. at 1751 (quoting *Travelers,* 514 U.S. at 654, 115 S.Ct. 1671). State law actions that are clearly subject to preemption include those where West Virginia law attempts to affect the manner in which pension benefits are calculated under federal law, where the pension plan's existence is a critical element of the state law cause of action, or one in which the West Virginia statute expressly refers to ERISA or ERISA plans. *See De Buono,* 520 U.S. at 815, 117 S.Ct. at 1752. Those state law actions that incidentally involve or refer to ERISA plans, but do not present the risk of conflicting or inconsistent state law concerning pension plan regulation are not preempted under federal law. When, as in this case, the state law claim has only a tangential relation to ERISA law and there has been no showing of any potential for state law that will conflict with federal pension law, the presumption against preemption has not been met. *See De Buono,* 520 U.S. at 813, 117 S.Ct. at 1751. The circuit court properly determined that this action was not subject to preemption under 29 U.S.C. § 1144(a).

## II.

### IMPLIED INDEMNITY

■ Only after PLI received a partial dismissal order for its counsel's signature pertaining to the dismissal of PBC from the civil action did PLI seek to file a cross-claim against PBC and to file a third-party complaint against Mr. Pellegrini under principles of implied indemnity. The civil action had been pending for well over two years before PLI sought to file these amended pleadings.[12] At the hearing before the circuit court on this issue, the court inquired as to a reason for the lengthy delay between the suit's origination and the request to amend the pleadings. In response, PLI stated only

that the case had been in federal court before it was remanded to state court and that discovery had not begun until 1995.

■ Delay and the accompanying element of prejudice to the other parties are critical factors that must be considered when a party seeks to amend pleadings, especially when the party seeking the amendments has suffered an adverse ruling or finds itself in an unfavorable posture due to settlement between the parties. *See Bluefield Sash and Door Co. v. Corte Constr. Co.,* 158 W.Va. 802, 805, 216 S.E.2d 216, 218 (1975), *overruled on other grounds by Haynes v. City of Nitro,* 161 W.Va. 230, 240 S.E.2d 544 (1977) (observing that "[i]mpleader under Rule 14(a) should never be allowed if there is a possibility of prejudice to the original plaintiff or the third party plaintiff"). As we stated in *Mauck v. City of Martinsburg,* 178 W.Va. 93, 357 S.E.2d 775 (1987), "[t]he liberality allowed in the amendment of pleadings does not entitle a party to be dilatory in asserting claims or to neglect his case for a long period of time." *Id.* at 95, 357 S.E.2d at 777. We expounded in *Mauck:* "Lack of diligence is justification for a denial of leave to amend where the delay is unreasonable, and places the burden on the moving party to demonstrate some valid reason for his neglect and delay." *Id.* Our review of the record reveals that PLI failed to offer a "valid reason for ... [its] neglect and delay" in waiting for over two years before it sought to assert a purely legal theory of recovery—implied indemnity. *Id.* If the predicate facts necessary for the assertion of an implied indemnity theory had not been revealed until discovery had begun in this case, the position of PLI in seeking a reversal of the lower court's ruling on this issue would be much improved. However, that is not the case. Moreover, since implied indemnity is a purely legal theory of recovery, not dependent on the existence of facts revealed in discovery, we are hard pressed to find any valid basis for the dilatoriness of PLI in seeking to amend its pleadings other than PLI's discomfort at being the sole defendant for liability to be assessed against.

There can be no question that PBC and Mr. Pellegrini would be prejudiced if they

---

12. The complaint was filed in July 1992; the settlement agreement between Martin Oil and PBC was reached in late October 1995; and PLI

first sought to amend its pleadings in late November 1995.

were to be required to defend against claims predicated on implied indemnity when they have both entered into settlement agreements that have been approved by the court. This Court is certainly loathe to approve of such a backdoor method of circumnavigating the finality of settlement agreements. As we stated in *Mauck*, "[a] motion for leave to amend a complaint is addressed to the sound discretion of the trial court." 178 W.Va. at 96, 357 S.E.2d at 778. We find no abuse of discretion in the trial court's decision not to permit PLI to amend its pleadings.[13]

Based on the foregoing, we affirm the decision of the Circuit Court of Upshur County.

Affirmed.

---

**13.** Although the lower court relied primarily on PLI's inability to be successful on an implied indemnity theory against either PBC or Mr. Pellegrini in denying PLI's motions to amend its pleadings, we are not limited by the lower court's grounds in making our review. *See Copley v. Mingo County Bd. of Educ.*, 195 W.Va. 480, 485, 466 S.E.2d 139, 144 ("stating that lower court's judgment may be affirmed 'when it appears that such judgment is correct on any legal ground disclosed by the record, regardless of the ground, reason or theory assigned by the lower court as the basis for the judgment' ") (quoting Syl. Pt. 3, *Barnett v. Wolfolk*, 149 W.Va. 246, 140 S.E.2d 466 (1965)).