512 S.E.2d 217

**CHEVY CHASE BANK, Appellee,**

v.

**William C. McCAMANT, Jr., Appellant.**

**No. 25049.**

Supreme Court of Appeals of
West Virginia.

Submitted Oct. 27, 1998.

Decided Dec. 14, 1998.

Stephen L. Gaylock, Esq., Michael R. Cline Law Offices, Charleston, West Virginia, Attorney for the Appellee.

Stephen Gibson Skinner, Nichols & Skinner, L.C., Charles Town, West Virginia, Attorney for the Appellant.

PER CURIAM:

The defendant below/appellant, William C. McCamant, Jr. [hereinafter "McCamant" or "appellant"], appeals the July 22, 1997, order of the Circuit Court of Jefferson County which denied the appellant's motion for a new trial or, in the alternative, to alter or amend the judgment in an action by the plaintiff below/appellee, Chevy Chase Bank [hereinafter "Chevy Chase" or "appellee"], against the appellant to collect $5,115.28 plus interest for unpaid credit card charges. In its May 8, 1997 final order, the circuit court found the appellee to be entitled to $5,115.28 plus interest from January 26, 1996 and further found that the appellee had violated the West Virginia Consumer Credit and Protection Act [hereinafter "WVCCPA"], W.Va. Code § 46A–1–101 et seq. Because of the single violation of the WVCCPA, the circuit court found that the appellant was entitled to collect $1000.00 from the appellee. As a result, the circuit court entered judgment for the appellee in the amount of $4,115.28 plus interest. Both parties moved for attorney fees which were denied.

This Court has before it the petition for appeal, all matters of record, and the briefs and argument of counsel. For the reasons set forth below, we affirm.

## I.

## FACTS

The appellant is a resident of Jefferson County, West Virginia. The appellee is a federally regulated savings bank currently based in Virginia. At the time the events at issue occurred, the appellee was located in Maryland.

The appellant applied for and received a credit card from the appellee and began charging goods and services. The appellant's monthly statements for the years 1989 to 1991 reveal a fairly active account. In time, however, trouble developed between the appellant and the appellee. The appellant's account became chronically delinquent, and the appellant disputed with the appellee over increases in the interest rate being charged on the balance of his account. As a result of the delinquency, the appellee suspended the appellant's charging privileges and made efforts to collect the amount due on the account.

The appellee ultimately filed suit in the Circuit Court of Jefferson County to collect from the appellant $5,115.28 plus interest in unpaid credit card charges. The appellant answered the complaint with a general denial and served a ten count amended counterclaim alleging various violations of the WVCCPA and the Federal Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 et seq. [hereinafter "FDCPA"]. The appellant later voluntarily withdrew those counts which alleged violations of the FDCPA.

The appellant's allegations of violations of the WVCCPA were based, in part, on a letter he received from the appellee's Maryland lawyer, Stephen G. Peroutka [hereinafter "Peroutka" or "Attorney Peroutka"] in which Peroutka warned of possible legal consequences if the appellant did not pay his credit card balance and invited the appellant to contact the appellee so that a satisfactory resolution of the matter could be achieved. The appellant also alleged in his counterclaim that a telephone call made by an employee of the appellee to the appellant's neighbor, Douglas Stein [hereinafter "Stein"], constituted a violation of the WVCCPA. At trial, the content of this telephone conversation between the appellee's employee and Stein was in dispute. Stein testified that the employee informed him there was a "banking emergency" and requested that Stein ask the appellant to call the appellee. The appellee's employee testified that, although she could not recall the specific conversation she had with Stein, she would not have used the term "banking emergency."

On May 6, 1997, the Circuit Court of Jefferson County conducted a bench trial and issued a final order on May 8, 1997. The

circuit court found that the appellee is entitled to $5,115.28 plus prejudgment interest at the rate of 24% from January 26, 1996 until the date of the order and statutory interest subsequent. The circuit court further found as a matter of law that the letter from Attorney Peroutka to the appellant did not constitute a violation of the WVCCPA. In addition, the circuit court found that the appellee violated the WVCCPA by telephoning Stein and falsely stating that there was a banking emergency.[1] As a result, the circuit court imposed the statutory penalty of $1000.00 against the appellee for its violation of the WVCCPA. Finally, the court concluded that this results in a net judgment in the amount of $4,115.28 owed by the appellant to the appellee. Both parties subsequently moved for attorney fees which were denied. By order of July 22, 1997, the circuit court denied the appellant's motion for a new trial or, in the alternative, to alter or amend the judgment.

## II.

### STANDARD OF REVIEW

We are guided by the fact that "[t]his Court reviews the circuit court's final order and ultimate disposition under an abuse of discretion standard. We review challenges to findings of fact under a clearly erroneous standard; conclusions of law are reviewed *de novo*." Syllabus Point 4, *Burgess v. Porterfield*, 196 W.Va. 178, 469 S.E.2d 114 (1996).

## III.

### DISCUSSION

*1.*

*Federal Preemption*

The appellee argues, in its cross-assignment of error, that because it is a federal savings bank organized under 12 U.S.C. § 1464 and insured by the Federal Deposit Insurance Corporation, the WVCCPA is preempted from regulating the appellee's debt collection practices by federal law and regulations. Because one of the issues before us concerns the WVCCPA's applicability to specific conduct engaged in by the appellee, we will consider this issue first.

In support of its position, the appellee states, first, that it is a federally chartered savings bank and is subject to regulation by the Office of Thrift Supervision, which has promulgated numerous regulations, including 12 C.F.R. § 545.1 (1998) and § 545.2 (1998).[2] According to § 545.1, entitled "General authority,"

A Federal savings association may exercise all authority granted it by the Home Owners' Loan Act of 1933 ("Act"), 12 U.S.C. 1464, as amended, and its charter and bylaws, whether or not implemented specifically by Office regulations, subject to the limitations and interpretations contained in this part.

§ 545.2, entitled "Federal preemption," provides,

The regulations in this part 545 are promulgated pursuant to the plenary and exclusive authority of the Office to regulate all aspects of the operations of Federal savings associations, as set forth in section 5(a) of the Act. This exercise of the Office's authority is preemptive of any state law purporting to address the subject of the operations of a Federal savings association.

The appellee concludes from the language of § 545.2 that it is the intention of the federal government that "the federal lending laws and regulations occupy the entire field of lending regulation for federal savings associations, leaving no room for state regulation." *Citing* 61 Fed.Reg. 50965 (1996). The appellee also points to various federal regulations, such as the Fair Debt Collection Practices Act, which are designed to protect consumers in their dealings with federal banks, includ-

---

1. W.Va.Code § 46A–2–129a (1994) states that "[n]o debt collector shall place a telephone call or otherwise communicate by telephone with a consumer or third party, at any place, including a place of employment, falsely stating that the call is "urgent" or an "emergency"."

2. We cite here to the most recent edition of 12 C.F.R. The sections cited above are unchanged from 12 C.F.R. §§ 545.1 and 545.2 (1995) which were in effect when the alleged violations of the WVCCPA occurred.

ing debt collection. The appellee concludes that these regulations preempt the operation of the WVCCPA. We note that the trial court found that the appellant's counterclaims regarding the West Virginia Consumer Credit and Protection Act are not preempted by federal law. As this is a conclusion of law, our review is *de novo*. *See* Syllabus Point 4, *Burgess v. Porterfield, supra.*

■■■ The preemption doctrine originates in the Supremacy Clause of the United States Constitution which provides:

This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.

U.S. Const. art. VI, cl. 2. We have stated that "[t]he Supremacy Clause of the United States Constitution, Article VI, Clause 2, invalidates state laws that interfere with or are contrary to federal law." Syllabus Point 1, *Cutright v. Metropolitan Life Ins. Co.,* 201 W.Va. 50, 491 S.E.2d 308 (1997). "Despite the existence of this doctrine, however, preemption is disfavored in the absence of convincing evidence warranting its application[.]" *Hartley Marine Corp. v. Mierke,* 196 W.Va. 669, 673, 474 S.E.2d 599, 603 (1996), *cert denied sub nom. Hartley Marine Corp. v. Paige,* 519 U.S. 1108, 117 S.Ct. 942, 136 L.Ed.2d 832 (1997). As a result, there is a strong presumption that Congress does not intend to preempt areas of traditional state regulation. *See FMC Corp. v. Holliday,* 498 U.S. 52, 111 S.Ct. 403, 112 L.Ed.2d 356 (1990). "This presumption, however, can be rebutted by a clear declaration of legislative intent to preempt state law." *Hartley,* 196 W.Va. at 673, 474 S.E.2d at 603 (citation omitted).

■■■ In analyzing the question of preemption, the focus is on congressional intent. *See Hartley, supra.* This intent may be manifested by express language in a federal statute or implicit in the structure and purpose of the statute. *Id.*

[I]n the absence of explicit statutory language signaling an intent to pre-empt, we infer such intent where Congress has legislated comprehensively to occupy an entire field of regulation, leaving no room for the states to supplement federal law, or where the state law at issue conflicts with federal law, either because it is impossible to comply with both or because the state law stands as an obstacle to the accomplishment and execution of congressional objectives[.]

*Hartley,* 196 W.Va. at 674, 474 S.E.2d at 604, *quoting Northwest Cent. Pipeline Corp. v. Kansas Corp. Comm'n,* 489 U.S. 493, 509, 109 S.Ct. 1262, 1273, 103 L.Ed.2d 509 (1989).

To establish a case of express preemption requires proof that Congress, through specific language, preempted the specific field covered by state law.... To prevail on a claim of implied preemption, "evidence of a congressional intent to pre-empt the specific field covered by state law" must be pinpointed.

*Hartley,* 196 W.Va. at 674, 474 S.E.2d at 604. (citation omitted). Finally, there are two types of implied preemption: field preemption and conflict preemption. *See id.*

[F]ield pre-emption[ ] [occurs] where the scheme of federal regulation is " 'so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it,' " and conflict pre-emption[ ] [occurs] where "compliance with both federal and state regulations is a physical impossibility," or where state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress[.]"

*Id., citing* 505 U.S. at 98, 112 S.Ct. at 2383.

■■■ After reviewing the applicable law, we find that the WVCCPA is not preempted by federal law from regulating the appellee's debt collection practices. First, there is no express preemption here. Although the appellee draws our attention to 12 C.F.R. § 545, this section does not concern debt collection practices. Also, the language quoted by the appellee from 61 Fed.Reg. 50965 concerns lending requirements governing the origination of loans and not debt collection

practices. Finally, we are aware of no federal laws or regulations that expressly preempt the specific field of debt collection by federal savings associations.

■ Second, we find no implied preemption. The appellee makes the broad assertion that the FDCPA, as well as other various federal regulations, preempt the WVCCPA, yet he points to no specific provisions of any federal statutes which pervade the field of debt collection or conflict with any provisions of the WVCCPA. In addition, the FDCPA, by its own terms, does not apply to a federal savings bank in the collection of its own debts. *See* 15 U.S.C. § 1692a(6) (1994). Moreover, the FDCPA does not preempt state law regulation of debt collection practices. According to 15 U.S.C. § 1692n (1994), the FDCPA "does not annul, alter, or affect, or exempt any person subject to [the Act] from complying with the laws of any State with respect to debt collection practices." Accordingly, we conclude that the WVCCPA is not preempted by federal law.

*2.*

*Applicability of W.Va.Code § 46A–2–123 to the Facts of this Case*

■ Having found that the WVCCPA is not preempted by federal law, we now consider the first issue raised by the appellant: Whether the circuit court erred as a matter of law in finding that a collection letter mailed to an in-state debtor by an out-of-state attorney is not prohibited by the WVCCPA.

This assignment of error concerns the proper application of W.Va.Code § 46A–2–123 (1974) to the facts of this case. According to W.Va.Code § 46A–2–123 (1974),

Unless a licensed attorney in this State, no debt collector shall engage in conduct deemed the practice of law. Without limiting the general application of the foregoing, the following conduct is deemed the practice of law:

(a) The performance of legal services, furnishing of legal advice or false representation, direct or by implication, that any person is an attorney;

(b) Any communication with consumers in the name of an attorney or upon stationery or other written matter bearing an attorney's name; and

(c) Any demand for or payment of money constituting a share of compensation for services performed or to be performed by an attorney in collecting a claim.

The appellant asserts that W.Va.Code § 46A–2–123 plainly and unambiguously prohibits an out-of-state attorney from mailing a collection letter to a West Virginia consumer. Therefore, the collection letter mailed to the appellant from Maryland attorney Stephen Peroutka constituted a violation of this statute.[3]

---

**3.** Attorney Peroutka's letter stated as follows:

Notice is hereby given you that any and all contemplated actions that have been considered by my client, Chevy Chase, F.S.B. are now recommended by their retained counsel.

This may include the filing of a law suit against you for the balance in full, attorney's fees, interest and court costs. Once judgment is obtained, it is my client's intention to use all available legal remedies to satisfy the indebtedness. This could include the filing of a Writ of Fieri Facias attaching any real or personal property owned by you. It could also include attachments against your wages and/or pecuniary accounts.

Be further advised that if a judgment is obtained against you, my client would be authorized to pursue post judgment discovery techniques which could include the summonsing of you to a court of appropriate jurisdiction to answer questions before a judge regarding your assets.

A prudent course would be to forestall such action by immediately calling my client's Collection Manager, Ms. Evelyn Goode at 1–800–313–4120.

Unless you notify this office within thirty (30) days after receiving this notice that you dispute the validity of the debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within thirty (30) days from receiving this notice, this office will obtain verification of the debt or obtain a copy of the judgment and mail you a copy of such judgment or verification. If you request this office in writing within thirty (30) days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor. This is an attempt to collect a debt, and any information obtained will be used for that purpose.

■ We begin our discussion by noting that "[a] statute is open to construction only where the language used requires interpretation because of ambiguity which renders it susceptible of two or more constructions or of such doubtful or obscure meaning that reasonable minds might be uncertain or disagree as to its meaning." *Hereford v. Meek,* 132 W.Va. 373, 386, 52 S.E.2d 740, 747 (1949). However, "[i]t is as well the duty of a court to disregard a construction, though apparently warranted by the literal sense of the words in a statute, when such construction would lead to injustice and absurdity." Syllabus Point 2, *Click v. Click,* 98 W.Va. 419, 127 S.E. 194 (1925). The technical language of the statute prohibits, in part, any debt collector unless a licensed attorney in this State, from any communication with consumers in the name of an attorney or upon stationery or other written matter bearing an attorney's name. We refuse to believe that the Legislature in enacting this code section,[4] intended to prohibit a Maryland attorney from drafting a letter on his own letterhead on behalf of a Maryland client, and sending it to a West Virginia resident.

■ It appears obvious to this Court that the purpose of the WVCCPA is to protect consumers from unfair, unconscionable, fraudulent, and abusive practices of debt collectors. Specifically, W.Va.Code § 46A–2–123 is designed to prohibit fraudulent practices of debt collectors by proscribing the practice of law by non-lawyers. "W.Va.Code § 46A–2–123 expressly forbids collection agencies from engaging in the practice of law." *State ex rel. Frieson v. Isner,* 168 W.Va. 758, 769, 285 S.E.2d 641, 650 (1981) (footnote omitted). In order to further this purpose, W.Va.Code § 46A–2–123(b) prevents non-lawyer debt collectors and debt collection agencies from fraudulently representing themselves as lawyers. Prior to the passage of consumer credit protection acts like the WVCCPA, unscrupulous debt collectors mailed threatening letters to consumers wherein they posed as attorneys and misrepresented the law. As a result, unsuspecting consumers were misinformed concerning their actual legal rights. At that time, the law offered little protection to consumers who were the recipients of such correspondence. As a result, shady debt collectors often ran roughshod over the rights of those who were at the mercy of their underhanded tactics. Dishonest debt collectors enjoyed a free hand at plying their trade outside the bounds of decency and morality. The WVCCPA was enacted, in part, to prohibit such fraudulent practices.

■ On the other hand, the WVCCPA is not designed to regulate the practice of law. "The exclusive authority to define, regulate and control the practice of law in West Virginia is vested in the Supreme Court of Appeals." Syllabus Point 1, *State ex rel. Askin v. Dostert,* 170 W.Va. 562, 295 S.E.2d 271 (1982). This Court's exclusive authority to govern the practice of law is a constitutional mandate. *See* W.Va. Const. art. 8, § 3; *State ex rel. Frieson v. Isner, supra.* Pur-

---

4. W.Va.Code § 46A–2–123 is based on a model national consumer act developed by the National Consumer Law Center. *See* National Consumer Act § 7.201 (First Final Draft 1970). W.Va.Code § 46A–2–123 reproduces verbatim the language of § 7.201 but omits two sections. § 7.201 provides:

Unless a licensed attorney in this State, no debt collector shall engage in conduct deemed the practice of law. Without limiting the general application of the foregoing, the following conduct is deemed the practice of law:

(1) the performance of legal services, furnishing of legal advice, or false representation, direct or by implication, that any person is an attorney;

(2) the solicitation of assignments of claims for the purpose of suit or at the instigation of an attorney;

(3) the institution of judicial proceedings on behalf of other persons except on an assigned claim;

(4) any communication with debtors in the name of an attorney or upon stationery or other written matter bearing an attorney's name; and

(5) any demand for or payment of money constituting a share of compensation for services performed or to be performed by an attorney in collecting a claim.

In 1973, the National Consumer Law Center promulgated an updated version of its original model act. *See* Model Consumer Credit Act § 6.201 (1973). The language of § 6.201 omits the qualifying phrase "in this State" and simply provides in relevant part, "[t]he practice of law by any debt collector, not a licensed attorney, in the collection or enforcement of any claim is prohibited."

suant to this authority, this Court has promulgated rules defining the practice of law, prescribed a code of ethics regulating the professional conduct of attorneys, and adopted procedures for disciplining violations thereof. *See* W.Va.Code § 51–1–4a. Other states, such as Maryland, have done likewise.[5]

Further, we believe that interpreting W.Va.Code § 46A–2–123 to prohibit out-of-state creditors from enlisting their out-of-state lawyers from mailing letters to consumers in West Virginia for the purpose of collecting delinquent debts would place such creditors in a very difficult position. Out-of-state creditors may be wary of drafting collection letters, or taking other actions in order to collect a debt, without the aid of an attorney for fear of violating W.Va.Code § 46A–2–123 or other provisions of the WVCCPA. Businesses such as Chevy Chase retain attorneys in order to avoid running afoul of consumer protection laws. If we were to accept the interpretation of W.Va. Code § 46A–2–123 urged on us by the appellant, out-of-state businesses would be forced to hire West Virginia lawyers in order to contact consumers located in this State. While this would be a boon for West Virginia lawyers, we hardly think this is what the Legislature intended.

In addition, we do not agree with the appellant concerning the substance of Attorney Peroutka's letter. *See* fn. 3, *supra.* The letter states that the appellee may file suit against the appellant, obtain judgment, execute upon that judgment, and take interrogatories in aid of execution of that judgment. The letter also invites the appellant to contact a specific employee of the appellee in order to resolve the issue and forego any

legal consequences. In light of the circumstances, this is not an unreasonable letter.

Finally, Attorney Peroutka did not falsely represent that he is an attorney. It is not disputed that Peroutka is licensed to practice law in Maryland. Because Peroutka is a licensed attorney, the fact that his name appears as such on his letterhead is an accurate representation of the facts and should not be deemed a violation of W.Va.Code § 46A–2–123. Therefore, based upon the foregoing, we find that to give W.Va.Code § 46A–2–123 its technical construction under the facts of this case would lead to an unjust and absurd result.[6]

### 3.

### *Attorney Fees*

The second and final assignment of error raised by the appellant is that the circuit court erred in failing to award the appellant any attorney fees or costs under the WVCCPA. In reviewing the ruling of the circuit court with respect to costs and attorney fees, "the standard is whether such ruling by the trial court constitutes an abuse of discretion." *Hopkins v. Yarbrough,* 168 W.Va. 480, 489, 284 S.E.2d 907, 912 (1981) (citations omitted). We have further stated that "the trial [court] ... is vested with a wide discretion in determining the amount of ... court costs and counsel fees, and the trial [court's] ... determination of such matters will not be disturbed upon appeal to this Court unless it clearly appears that he has abused his discretion." Syllabus Point 4, in part, *Ball v. Wills,* 190 W.Va. 517, 438 S.E.2d 860 (1993).

The appellant forwards several arguments in support of its contention that the circuit court erred in not awarding him attor-

---

5. In its brief to this Court, the appellee asserts that W.Va.Code § 46A–2–123 is an unconstitutional attempt by the West Virginia Legislature to define and regulate the practice of law. The appellee did not, however, raise this issue below. "This Court will not pass on a nonjurisdictional question which has not been decided by the trial court in the first instance." Syllabus Point 2, *Sands v. Security Trust Co.,* 143 W.Va. 522, 102 S.E.2d 733 (1958). Nevertheless, even though this Court has the exclusive authority to define the practice of law, we do not believe that W.Va.

Code § 46A–2–123 unconstitutionally usurps this authority by prohibiting non-lawyers from engaging in "the practice of law" in the narrow context of debt collection.

6. The appellant also asserts that Chevy Chase is liable for the illegal actions of its agent Attorney Peroutka. Because of our determination that W.Va.Code § 46A–2–123 does not prohibit Attorney Peroutka's conduct here, we decline to address this issue.

ney fees. First, the appellant asserts that the circuit court erred procedurally in its May 8, 1997 order when it concluded simply, "the plaintiff and defendant shall each bear their attorney fees and costs" without stating findings of fact and conclusions of law or granting the appellant a hearing to present evidence in support of his motion for attorney fees. The appellant bases this argument, in part, on Rule 52(a) of the West Virginia Rules of Civil Procedure. According to W.Va.R.C.P. 52(a) (1997):

> In all actions tried upon the facts without a jury or with an advisory jury, the court shall find the facts specially and state separately its conclusions of law thereon and direct the entry of appropriate judgment; and in granting or refusing preliminary injunctions the court shall similarly set forth the findings of fact and conclusions of law which constitute the grounds of its action. Requests for findings are not necessary for purposes of review. Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses. The findings of a commissioner, to the extent that the court adopts them, shall be considered as the findings of the court. It will be sufficient if the findings of fact and conclusions of law are stated orally and recorded in open court following the close of the evidence or appear in an opinion or memorandum of decision filed by the court. Findings of fact and conclusions of law are unnecessary on decisions of motions under Rules 12 or 56 or any other motion except as provided in Rule 41(b).[7]

*Citing also, inter alia, Aetna Cas. & Sur. Co. v. Pitrolo* 176 W.Va. 190, 342 S.E.2d 156 (1986).

▇ We do not agree with the appellant's first contention. Rule 52(a) clearly provides, in relevant part, that *"[f]indings of fact and conclusions of law are unnecessary on decisions of motions under Rules 12 or 56 or any other motion except as provided in Rule 41(b)."* (Emphasis added). This provision clearly provides that decisions on all motions, except as provided by Rule 41(b), do not require findings of fact and conclusions of law. A motion for attorney fees is certainly included within the category of all motions. Further, the single exception concerns only decisions on motions for dismissal on the merits and in no way includes attorney fees. Therefore, Rule 52(a) expressly does not apply to decisions on motions for attorney fees. The appellant's reliance on *Aetna Cas. & Sur. Co., supra,* and similar cases is misplaced as well. These cases merely state the factors to be considered by a circuit court in determining what should be considered a reasonable fee. According to *Landmark Baptist Church v. Brotherhood Mut. Ins. Co.,* 199 W.Va. 312, 484 S.E.2d 195 (1997) (*per curiam*), when a trial court awards attorney fees, it is required to make findings for this Court's determination of the reasonableness of the award. When attorney fees are not awarded, findings are not necessary. Concerning the appellant's allegation of error in being denied a post-trial hearing on the issue of attorney fees, the appellant presents us with no law that such a hearing is required and we are aware of none. Accordingly, we find no procedural defects in the circuit court's denial of an award of attorney fees to the appellant.

▇ The appellant asserts, second, that the purpose and policies undergirding WVCCPA demand mandatory awards of attorney fees to successful litigants under the WVCCPA. Specifically, the appellant notes this Court's statement that the WVCCPA is a remedial act designed to protect consumers from the unfair practices of creditors and, as such, should be liberally construed. *Citing State ex rel. McGraw v. Scott Runyan Pontiac–Buick, Inc.,* 194 W.Va. 770, 461 S.E.2d 516 (1995). The appellant opines that without the guarantee of reimbursement of attorney fees and costs for successful litigants, West Virginia consumers are financially unable to bring actions under the WVCCPA, and West Virginia lawyers are unwilling to handle such cases.

---

**7.** W.Va.R.C.P. 52(a) was amended in 1998. *See* Court Rules, May 1998, supplement.

We are not persuaded by the appellant's argument. W.Va.Code § 46A–5–104 (1994) provides:

> In any claim brought under [the WVCCPA] applying to illegal, fraudulent or unconscionable conduct or any prohibited debt collection practice, the court may award all or a portion of the costs of litigation, including reasonable attorney fees, court costs and fees, to the consumer. On a finding by the court that a claim brought under this chapter applying to illegal, fraudulent or unconscionable conduct or any prohibited debt collection practice was brought in bad faith and for the purposes of harassment, the court may award to the defendant reasonable attorney fees.

By using the word "may" in conferring upon courts the power to award attorney fees, the Legislature clearly made the granting of such awards discretionary. In so doing, the Legislature did not perceive a conflict between the purpose of the WVCCPA and the provisions of W.Va.Code § 46A–5–104. As stated above, normally "[w]hen a statute is clear and unambiguous and the legislative intent is plain the statute should not be interpreted by the courts, and in such case it is the duty of the courts not to construe but to apply the statute." Syllabus Point 1, *State ex rel. Fox v. Board of Trustees of Policemen's Pension*, 148 W.Va. 369, 135 S.E.2d 262 (1964), *overruled on other grounds, Booth v. Sims*, 193 W.Va. 323, 456 S.E.2d 167 (1995). The language of W.Va.Code § 46A–5–104 is clear and unambiguous. Therefore, it is the duty of this Court to apply the statute as it is written. The appellant also offers the specious argument that W.Va.Code § 46A–5–104 provides that courts have only two options which are to award either all or a portion of the costs of litigation. "As a general rule, each litigant bears his or her own attorney fees absent express statutory, regulatory, or contractual authority for reimbursement." *Daily Gazette Co., Inc. v. Canady*, 175 W.Va. 249, 250, 332 S.E.2d 262, 263 (1985) (citation omitted). Therefore, absent the express language of W.Va.Code § 46A–5–104, successful litigants under the WVCCPA would receive no attorney fees. This code section simply authorizes courts to award attorney fees in certain prescribed instances where they would otherwise award none.

Finally, the appellant asserts that this case is appropriate for an award of attorney fees because the appellee "forced him to incur thousands of dollars in fees and costs while at the same time trying to humiliate him, making him a morally bad person for bringing collection claims against [him]." We also find this argument of the appellant to be wholly devoid of merit. A careful review of the record reveals that the appellant owed the appellee thousands of dollars in delinquent credit card payments. Prior to taking legal action against the appellant, the appellee made several attempts to contact the appellant to effect a satisfactory resolution of the appellant's delinquent debt. Although the circuit court found that one of these attempts to contact the appellant constituted a violation of the WVCCPA, it can hardly be described as egregious conduct. Therefore, we find that the trial court did not abuse its discretion in denying attorney fees and costs to the appellant.

## IV.

## CONCLUSION

In conclusion, based on the foregoing reasons, we affirm the judgment of the Circuit Court of Jefferson County.

Affirmed.

Justice McGRAW did not participate in the decision of this case.

STARCHER, Justice, dissenting:

I entirely agree with the majority opinion's conclusion that a literal reading of *W.Va. Code*, 46A–2–123[1974] means that an out-of-state business that wants to use a lawyer to collect debts in West Virginia must use a West Virginia lawyer, or have their out-of-state lawyer admitted to practice in West Virginia.

This would hardly be a novel requirement. We require every other business that wants to have someone practice law for the business in this State to either use a licensed

West Virginia attorney or to have their out-of-state licensed lawyer temporarily admitted to practice here. *West Virginia Rules for the Admission to the Practice of Law*, Rule 8.0 [1995]. What is wrong with the Legislature making this rule explicit as to debt collection by lawyers, as it has done in *W.Va. Code*, 46A–2–123?

In arriving at the conclusion that the Legislature could not mean what they say in this statute, the majority opinion's logic skips a critical and necessary stage in its reasoning.

The opinion first recites a principle of statutory construction to the effect that this Court will only construe statutes that are ambiguous in their language. Then the opinion quotes a principle to the effect that we will disregard absurd or unjust statutory constructions.

However, the majority opinion omits a necessary logical predicate that must exist, before one may link these two principles. The majority opinion never identifies any ambiguous language in the statute that would authorize statutory construction to occur in the first instance. Thus, the majority's reasoning is unpersuasive.

The majority opinion says that it "refuses to believe" that the Legislature "intended" to prohibit a Maryland lawyer from sending debt collection letters, threatening West Virginians. But believe it or not, that is exactly what the Legislature did do—in clear and unequivocal language.

I would reverse the circuit court on this issue, because the court failed to apply the statute in a correct fashion.

Accordingly, I dissent.