590 S.E.2d 656

**RHODODENDRON FURNITURE & DE-SIGN, INC., a West Virginia corporation, Plaintiff Below, Appellant,**

v.

**Marianna MARSHALL, Defendant Below, Appellee.**

No. 31262.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 24, 2003.

Decided Nov. 24, 2003.

Timothy J. LaFon, Esq., Ciccarello, DelGiudice & LaFon, Charleston, for Appellant.

George J. Cosenza, Esq., Cosenza, Underwood & Merriman, Parkersburg, for Appellee.

PER CURIAM.

The appellant Rhododendron Furniture & Design, Inc. appeals the Wood County Circuit Court's dismissal of the appellant's collection action. We affirm the circuit court's ruling with certain admonitions.

### I.

During the years of 1996, 1997, and 1998, the appellee Marianna Marshall was president of the appellant-corporation Rhododendron Furniture & Design, Inc. ("Rhododendron Furniture"), and Ms. Marshall owned fifty percent of Rhododendron Furniture's outstanding stock. During those years, Rhododendron Furniture's current president Scott Quillen held the remaining fifty percent of the outstanding shares and worked as the corporation's treasurer and secretary.

In 1998, Mr. Quillen sued Marianna Marshall and Rhododendron Furniture & Design, Inc.[1] In his suit, Mr. Quillen alleged that Ms. Marshall had mismanaged Rhododendron Furniture.

In July of 1999, the parties reached a settlement. As part of the settlement agreement, Ms. Marshall conveyed all her Rhodo-

---

1. Refuel, Inc., a corporate lender, was also named in the action.

dendron Furniture stock to Mr. Quillen, and Mr. Quillen agreed to dismiss his suit against Ms. Marshall with prejudice. According to the language of the settlement agreement, the parties agreed to execute a "[r]elease that releases each from any and all claims arising from allegations in the lawsuit and/or in any way related to this joint ownership and/or involvement in any fashion with Rhododendron." On July 30, 1999, the parties executed a release pursuant to the settlement agreement. The release stated, in part, that:

> ... [SCOTT] QUILLEN and RHODO-DENDRON [FURNITURE], their agents, servants, employees, heirs, predecessors, successors, assigns and representatives, hereby release and forever discharge [MARIANNA] MARSHALL and REFUEL, [INC.], for themselves, their agents, servants, employees, heirs, predecessors, successors, assigns, and representative, from all claims, demands, and causes of action that QUILLEN or RHODODENDRON may now have, known or unknown, and whether or not any such claims may be knowable to or be discoverable by QUILLEN or RHODODENDRON against MARSHALL and REFUEL.

Mr. Quillen asserts that shortly after he became president of Rhododendron Furniture, he discovered $17,000.00 in unpaid loans made by Rhododendron Furniture to Ms. Marshall. After Ms. Marshall declined to pay the $17,000.00 that Mr. Quillen claimed she owed, Rhododendron Furniture filed this action to collect the $17,000.00.

In its complaint, Rhododendron Furniture states that "[t]hese loans are documented on the Plaintiff's [Rhododendron Furniture] tax returns for the years of 1996, 1997, and 1998, which were signed by the Defendant [Marianna Marshall] and on the books and records of the Plaintiff corporation which were maintained by the Defendant."

In response to Rhododendron Furniture's complaint, Ms. Marshall filed a motion to dismiss and attached the release in support of her motion.

Rhododendron Furniture responded to Ms. Marshall's motion to dismiss by filing a response and attaching the settlement agree-ment. Rhododendron Furniture argued that the release offered by Ms. Marshall did not excuse her from having to repay the loan. Specifically, Rhododendron Furniture point-ed to two sections in the settlement agree-ment and release that dealt with warranties and other representations. The first warranty section, in the settlement agreement, stated that Ms. Marshall "represents and warrants that all liens, encumbrances and liabilities of Rhododendron were fairly and clearly represented in the books and records of said Corporation." The second section, in the release, states that "all representations and warranties in the July 04, 1999 [settlement] agreement between the parties shall survive the closing and execution of this release."

Based on these two sections of the settlement agreement, Rhododendron Furniture contended that the release did not cover the $17,000.00 in loans because the loans were not adequately shown in Rhododendron Furniture's business records. In support of its allegations, Rhododendron Furniture submitted the affidavit of an accounting expert who stated that the $17,000.00 in loans were not fairly and clearly represented in Rhododendron Furniture's business records.

The circuit court held a hearing on Ms. Marshall's motion, and, on January 22, 2002, granted Ms. Marshall's motion to dismiss. The circuit court dismissed the claim "based upon an examination of the file, the release executed by the parties, and it appearing proper to do so."

Rhododendron Furniture appeals from the circuit court's ruling granting the motion to dismiss. We affirm the circuit court's order dismissing the appellant's action.

## I.

This Court reviews a circuit court's order granting a motion to dismiss under a *de novo* standard. "Appellate review of a circuit court's order granting a motion to dismiss a complaint is de novo." Syllabus Point 2, *State ex rel. McGraw v. Scott Runyan Pontiac–Buick, Inc.,* 194 W.Va. 770, 461 S.E.2d 516 (1995). We also review orders granting summary judgments *de novo.* "A

**466**

circuit court's entry of summary judgment is reviewed *de novo*." Syllabus Point 1, *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994).

Rhododendron Furniture contends that the circuit court erred in dismissing its complaint because its complaint did state a claim upon which relief could be granted as required by Rule 12(b)(6) of the *West Virginia Rules of Civil Procedure* [1998]. We agree that if the circuit court had limited its review to the pleadings without considering the release and the settlement agreement, then Rhododendron Furniture's complaint may have survived a Rule 12(b)(6) motion.

■ However, the circuit court considered evidence beyond the complaint in deciding whether to dismiss the appellant's claim. The consideration of evidence beyond the complaint converted the appellee's motion to a motion for summary judgment under *W.V.R.C.P.* Rule 56 [1998]. "Only matters contained in the pleading can be considered on a motion to dismiss under Rule 12(b) R.C.P., and if matters outside the pleading are presented to the court and are not excluded by it, the motion should be treated as one for summary judgment and disposed of under Rule 56 R.C.P. if there is no genuine issue as to any material fact in connection therewith. If a summary judgment is entered under Rule 56 R.C.P.[,] it is a dismissal with prejudice; whereas, a judgment sustaining a motion to dismiss under Rule 12(b) R.C.P. is not a dismissal with prejudice" Syllabus Point 4, *United States Fidelity and Guaranty Company v. Eades*, 150 W.Va. 238, 144 S.E.2d 703 (1965).

■ Having reviewed the language of the complaint, the settlement agreement, and the release, we concur with the circuit court's ruling that the release shields Ms. Marshall from "all claims, demands, and causes of action that Rhododendron Furniture or Mr. Quillen might have" against her. Rhododendron Furniture admits in its own complaint that the loans were listed on Rhododendron Furniture's tax returns and on Rhododendron Furniture's "books and records." By submitting the affidavit of their accounting expert, Rhododendron Furniture attempted to make a question of fact where no question

existed. This Court, therefore, affirms the circuit court's finding barring Rhododendron Furniture's collection action against Ms. Marshall.

■ This Court has two concerns that are worth noting. First, procedurally, this case was not well-delineated below. Ms. Marshall filed her motion to dismiss without specifying under which section of the *West Virginia Rules of Civil Procedure* she was bringing her motion. And in granting Ms. Marshall's motion to dismiss, the circuit court did not specify which rule of civil procedure that the circuit court used to grant the motion to dismiss. Such distinctions matter both procedurally and substantively. As discussed above, whether the circuit court dismisses a party's case under Rule 12 or Rule 56 determines if the nonmoving party will have the opportunity to re-file, amend their complaint, or conduct additional discovery.

■ Second, we are concerned with the brevity of the circuit court's order. Regardless of whether the circuit court dismissed an action under Rule 12(b)(6) or granted a motion for summary judgment under Rule 56 of the *West Virginia Rules of Civil Procedure*, the circuit court must provide adequate findings of fact and conclusions of law to allow genuine appellate review. We remind circuit courts that "[a]lthough our standard of review for summary judgment remains de novo, a circuit court's order granting summary judgment must set out factual findings sufficient to permit meaningful appellate review. Findings of fact, by necessity, include those facts which the circuit court finds relevant, determinative of the issues and undisputed." Syllabus Point 3, *Fayette County National Bank v. Lilly*, 199 W.Va. 349, 484 S.E.2d 232 (1997).

In the instant case, the circuit court failed to provide adequate findings of fact and conclusions of law to facilitate appellate review. Fortunately, the record in this case is brief and easily evaluated. Therefore, this Court will not further delay the conclusion of this case because of the circuit court's omissions.

## III.

We treat the action below as granting a motion for summary judgment. Accordingly, we affirm the circuit court's order granting the appellee's motion to dismiss.

Affirmed.