647 S.E.2d 718

**Grace LONTZ and Beverly Pettit, Plaintiffs Below, Appellants,**

v.

**Joyce THARP; Elizabeth Doak; James Baish; Sandeep Thakrar; and Monical, LLC, d/b/a Holiday Inn Express, Defendants Below, Appellees.**

No. 33243.

Supreme Court of Appeals of West Virginia.

Submitted: April 18, 2007.

Decided: June 13, 2007.

Dissenting Opinion of Justice Starcher June 27, 2007.

Paul J. Harris, Esq., Wheeling, for the Appellants.

John R. Merinar, Jr., Esq., Steptoe & Johnson, Clarksburg, Mario R. Bordogna, Esq., Monte L. Williams, Esq., Steptoe & Johnson, Morgantown, for the Appellees.

PER CURIAM.

This action is before this Court upon the appeal of Grace Lontz and Beverly Pettit from the May 11, 2006, order of the Circuit Court of Ohio County, West Virginia, dismissing their action for wrongful discharge filed against their employer, Monical, LLC, d/b/a Holiday Inn Express.[1] The Circuit Court concluded that the action should be dismissed because it is preempted from State adjudication by the National Labor Relations Act. 29 U.S.C. § 151 (1947), *et seq.* The appellants contend that the action should remain in the Circuit Court because they assert that their discharge from employment violated the West Virginia Labor–Management Relations Act for the Private Sector. *W. Va.Code*, 21–1A–1 (1971).

This Court has before it the petition for appeal, all matters of record and the briefs and argument of counsel. Upon the applicable *de novo* standard of review and for the reasons expressed below, this Court is of the opinion that the Circuit Court was correct in concluding that the action is preempted by the National Labor Relations Act. Thus, appellants Lontz and Pettit may pursue their claims before the National Labor Relations

---

1. In addition to wrongful discharge, appellant Lontz alleges that her employer violated the West Virginia Wage Payment and Collection Act. *W. Va.Code*, 21–5–1 (1987), *et seq.* As reflected in the May 11, 2006, order, the Circuit Court ruled that, although the wrongful discharge action of Lontz and Pettit is preempted, the Wage Payment and Collection claim would remain before the Court. The parties do not contest that ruling, and the ruling was later confirmed by the federal Court of Appeals. As a result, this appeal falls within the context of Rule 54(b) of the West Virginia Rules of Civil Procedure which provides that, when more than one claim for relief is presented in an action, the circuit court may direct the entry of a "final judgment" as to one or more of the claims for purposes of appeal.

Board. Accordingly, the May 11, 2006, order of the Circuit Court of Ohio County is affirmed.

I.

Factual and Procedural Background

Appellants Lontz and Pettit worked at the Holiday Inn Express located in the Dallas Pike area of Ohio County, West Virginia. The controversy resulted when various employees at the Inn sought to unionize in 2003. Soon after, the employment of Lontz and Pettit ceased. Lontz and Pettit then filed an action in the Circuit Court of Ohio County alleging wrongful discharge. In addition to Monical, the named defendants included the following individuals who held management positions connected with the Holiday Inn Express: Joyce Tharp, Elizabeth Doak, James Baish and Sandeep Thakrar.

An amended complaint, filed in November 2003, alleged that the management at the Holiday Inn Express was "adamantly opposed to any union organizing activities and used legal and illegal means in an attempt to defeat the employees' efforts to unionize." Specifically, Lontz alleged that she was constructively discharged because she "refused to engage in unlawful conduct to have a union organizer arrested." Pettit alleged that she was wrongfully discharged because her employer blamed her for "commencing the union activity." According to Pettit, the defendants (the appellees in this appeal) engaged in a conspiracy to discharge her based on their belief that she assisted, cooperated and encouraged "certain employees to engage in union organizing activities." The amended complaint concluded by asserting that the conduct of the defendants violated the public policy of West Virginia.[2]

The appellees filed a motion to dismiss asserting that the action is preempted by the National Labor Relations Act. 29 U.S.C. § 151 (1947), et seq. However, prior to a ruling thereon, the appellees filed a notice that the action had been removed to the United States District Court for the Northern District of West Virginia. 28 U.S.C. § 1446 (1996). On July 1, 2004, the District Court dismissed the appellants' wrongful discharge action, concluding that it is subject to the National Labor Relations Act and, therefore, should be pursued before the National Labor Relations Board.[3]

Upon appeal, the United States Court of Appeals for the Fourth Circuit vacated the ruling of the District Court and held that the question of preemption was for the Circuit Court of Ohio County, West Virginia, to decide, rather than the District Court. Lontz v. Tharp, 413 F.3d 435 (4th Cir.2005). In so ruling, the Court of Appeals observed that removal to District Court is appropriate: (1) where there is diversity of citizenship, (2) where the complaint reveals a federal question essential to the plaintiff's cause of action or (3) where the "complete preemption" doctrine displaces state-law claims in a federally regulated area, such as in matters of federal concern under the Employee Retirement Income Security Act and the National Bank Act. 413 F.3d at 441. Focusing on complete preemption, the Court of Appeals stated that the sine qua non of the doctrine "is a pre-existing federal cause of action that can be brought in the district courts." 413 F.3d at 442.

Applying those principles herein, the Court of Appeals in Lontz determined that, although the wrongful discharge action involves ostensible violations of sections 7 and 8 of the National Labor Relations Act, 29 U.S.C. § 157 (1947) and 29 U.S.C. § 158

---

2. The West Virginia Labor–Management Relations Act for the Private Sector, W. Va.Code, 21–1A–1 (1971), et seq., is not cited in the complaint or the amended complaint filed by the appellants. However, the appellants equate the public policy they refer to with W. Va.Code, 21–1A–1(a) (1971), of the Act which states in part: "It is hereby declared to be the public policy of this State ... to encourage the practice and procedure of collective bargaining."

3. The notice of removal filed in the District Court stated that appellants Lontz and Pettit had previously filed charges with the National Labor Relations Board "alleging that the same matters complained of before the Circuit Court of Ohio County, West Virginia, are violations of federal law, specifically the NLRA." The record indicates, however, that the charges, case no. 6–CA–33788 (Lontz) and case no. 6–CA–33789 (Pettit), were withdrawn by the appellants prior to a decision by the Board on the merits.

(1974), those sections do not, in themselves, create jurisdiction in the federal courts.[4] Thus, removal to the District Court under the complete preemption doctrine was error, and the proper forum to decide the question of preemption was the Circuit Court of Ohio County. *See State ex rel. Orlofske v. City of Wheeling,* 212 W.Va. 538, 543, 575 S.E.2d 148, 153 (2002) (indicating that when a state proceeding presents a preemption issue the proper course is to seek resolution of that issue by the state court). As the Court of Appeals made clear: "Even though their ordinary preemptive power is great, sections 7 and 8 do not on their own terms confer federal jurisdiction and therefore cannot be the basis of removal through complete preemption." 413 F.3d at 444. Consequently, the Court of Appeals, in *Lontz,* acknowledged that, even though a defendant might ultimately prove that the action is preempted under the National Labor Relations Act, that does not establish that the action is removable to a federal district court. 413 F.3d at 443.

Upon remand, the Circuit Court conducted a hearing and, pursuant to the order of May 11, 2006, dismissed the appellants' action.[5] The Circuit Court concluded that the National Labor Relations Act "preempts the plaintiffs' allegations in this case of wrongful and/or constructive discharge because of union activity" as set forth in the amended complaint. The dismissal did not include the claim alleged by Lontz under the West Virginia Wage Payment and Collection Act. *See,* n. 1, *supra.* This appeal is from the May 11, 2006, order.

## II.

### Standards of Review

The issue before this Court is whether the Circuit Court committed error in granting the appellees' motion to dismiss upon the ground that the wrongful discharge action is preempted by the National Labor Relations Act. As the motion states, the appellees rely on two provisions of Rule 12(b) of the West Virginia Rules of Civil Procedure: subsection (1), lack of jurisdiction over the subject matter, and subsection (6), failure to state a claim upon which relief can be granted. *See* Lugar & Silverstein, *West Virginia Rules of Civil Procedure* p. 100–03 (Michie 1960), discussing the history of Rule 12(b).

In syllabus point 2 of *State ex rel. McGraw v. Scott Runyan Pontiac–Buick,* 194 W.Va. 770, 461 S.E.2d 516 (1995), this Court observed: "Appellate review of a circuit court's order granting a motion to dismiss a complaint is *de novo.*" Syl. pt. 1, *Rhododendron Furniture & Design v. Marshall,* 214 W.Va. 463, 590 S.E.2d 656 (2003); syl. pt. 1, Bowers v. Wurzburg, 205 W.Va. 450, 519 S.E.2d 148 (1999). Moreover, citing *Kollar v. United Transportation Union,* 83 F.3d 124, 125 (5th Cir.1996), this Court confirmed, in *Hartley Marine Corp. v. Mierke,* 196 W.Va. 669, 673, 474 S.E.2d 599, 603 (1996), that "preemption is a question of law reviewed *de novo.*" *State v. Quintero Morelos,* 133 Wash.App. 591, 137 P.3d 114, 118 (2006); *Galvez v. Kuhn,* 933 F.2d 773, 776 (9th Cir.1991).

## III.

### Discussion

In remanding the appellants' action to the Circuit Court, the Court of Appeals in *Lontz* emphasized that the question of preemption under sections 7 and 8 of the National Labor Relations Act should be viewed under the "*Garmon* preemption" as set forth in *San Diego Building Trades Council v. Garmon,* 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959). In *Garmon,* the Supreme Court of

**4.** Section 7 of the National Labor Relations Act, 29 U.S.C. § 157 (1947), concerns the right of employees to form, join or assist labor organizations and "to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining[.]" Section 8 of the Act, 29 U.S.C. § 158 (1974), concerns unfair labor practices and provides, for example, that it shall be an unfair labor practice for an employer to inter-

fere with employees in the exercise of their rights under section 7.

**5.** According to the May 11, 2006, order, the hearing conducted by the Circuit Court took place on April 28, 2006. A transcript of that hearing is not included in the record before this Court.

the United States held that a California action brought by an employer for damages caused by union picketing was preempted because the action fell within the purview of sections 7 and 8 of the Act. As the Supreme Court stated: "When an activity is arguably subject to § 7 or § 8 of the Act, the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board if the danger of state interference with national policy is to be averted." 359 U.S. at 245, 79 S.Ct. at 780, 3 L.Ed.2d at 783.

Although the Supreme Court indicated in *Garmon* that not all cases touching on sections 7 and 8 of the Act are preempted, the Court suggested that any doubt should be resolved in favor of the authority of the National Labor Relations Board. Thus, the Court explained:

> At times it has not been clear whether the particular activity regulated by the States was governed by § 7 or § 8 or was, perhaps, outside both these sections. But courts are not primary tribunals to adjudicate such issues. It is essential to the administration of the Act that these determinations be left in the first instance to the National Labor Relations Board.

359 U.S. at 244–45, 79 S.Ct. at 779, 3 L.Ed.2d at 783.

■ Citing *Garmon*, this Court, in syllabus point 5 of *United Maintenance and Manufacturing v. United Steelworkers of America*, 157 W.Va. 788, 204 S.E.2d 76 (1974), held: "Where a labor dispute is subject to National Labor Relations Board jurisdiction, a state is preempted from acting to enforce private or public rights."

Accordingly, this matter differs from *Greenfield v. Schmidt Baking Company*, 199 W.Va. 447, 485 S.E.2d 391 (1997), wherein this Court held in syllabus point 4 that the application of State law is preempted by § 301 of the Labor Management Relations Act, 29 U.S.C. § 185 (1947), "only if such application requires the interpretation of a collective bargaining agreement." Subsection (a) of § 301 concerns "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce[,]" and the issue in *Greenfield* was whether the action of the employee against his employer for defamation, invasion of privacy and the intentional infliction of emotional distress was preempted by that federal statute. In contrast, the action now before us involves a consideration of sections 7 and 8, 29 U.S.C. § 157 (1947), and 29 U.S.C. § 158 (1974), as to which the *"Garmon* preemption" specifically applies. Nevertheless, the implication found in *Greenfield*, that the preemptive effect of federal law should be examined on a case-by-case basis, is helpful in this matter. *Greenfield*, 199 W.Va. at 453, 485 S.E.2d at 397. *See also, General Motors Corporation v. Smith*, 216 W.Va. 78, 85, 602 S.E.2d 521, 528 (2004).

■ Here, the appellants allege in their amended complaint that the management at the Holiday Inn Express used both legal and illegal means in an attempt to defeat the employees' efforts to unionize. Lontz alleges that she was constructively discharged because she refused to engage in unlawful conduct to have a union organizer arrested. Pettit alleges that she was wrongfully discharged because she was blamed for commencing union activity. Specifically, Pettit asserts that the appellees engaged in a conspiracy to discharge her based on their belief that she assisted, cooperated and encouraged various employees to participate in union organizing activities. Plainly, those allegations implicate the scope and reach of sections 7 and 8 of the National Labor Relations Act, 29 U.S.C. § 157 (1947), and 29 U.S.C. § 158 (1974), in that they suggest both a violation of the right to form, join or assist labor organizations as protected under section 7 and a violation of section 8 concerning unfair labor practices. Consequently, the allegations of transgressions of State public policy notwithstanding, this Court is of the opinion that the Circuit Court was correct in concluding that the appellants' wrongful discharge action is preempted by the National Labor Relations Act.

■ Nor is this result altered by the appellants' assertion that they were supervisors at the Holiday Inn Express and, as such, cannot pursue charges before the National

Labor Relations Board. Using comparable statutory language, supervisors are excluded from the term "employee" under both the National Labor Relations Act, 29 U.S.C. § 152(3) (1978), and the West Virginia Labor–Management Relations Act for the Private Sector, *W.Va.Code*, 21–1A–2(a)(3) (1971).[6] It should be noted, however, that the original and amended complaints filed in the Circuit Court do not describe the appellants as supervisors. Rather, those pleadings allege that the appellants "were employed at the Holiday Inn Express." Nor did the appellants describe themselves as supervisors in their response in opposition to the motion to dismiss. The response was filed in the Circuit Court following the decision of the Court of Appeals to remand the action to State court.

In the *Lontz* opinion, however, the Court of Appeals referred to the appellants as "hotel supervisors," and they were so described in the earlier charges before the National Labor Relations Board, which charges the appellants withdrew. *See*, n. 3, *supra*. Nevertheless, the issue of whether the appellants were supervisors has never been resolved.

In view of the nexus between the appellants' allegations concerning their discharge and sections 7 and 8 of the National Labor Relations Act, this Court concludes that the National Labor Relations Board is the appropriate forum to determine the supervisor issue "in the first instance." *Garmon*, *supra*. As stated by the appellees: "It is for the NLRB to look at the provisions of the NLRA, to perform a factual inquiry into the nature of [the appellants'] responsibilities and then come to a conclusion as to whether

they are entitled to the protection of the NLRA."

## IV.

### Conclusion

For the reasons expressed above, the Circuit Court correctly determined that the appellants' action for wrongful discharge is preempted by the National Labor Relations Act. Thus, appellants Lontz and Pettit may pursue their claims before the National Labor Relations Board. Accordingly, the May 11, 2006, order of the Circuit Court of Ohio County, West Virginia, is affirmed.

Affirmed

STARCHER, J., dissenting.

I dissent from the conclusion reached in the majority opinion that the National Labor Relations Act (hereinafter "NLRA") preempts the appellants' state law claims.

The majority has departed from a long line of cases where this Court has guarded against unnecessary federal preemption of our state's right to provide a remedy for wrongful acts. *See*, *e.g.*, *In Re: West Virginia Asbestos Litigation*, 215 W.Va. 39, 592 S.E.2d 818 (2003) (preemption the exception, not the rule); Syllabus Point 3, *State ex rel. Orlofske v. City of Wheeling*, 212 W.Va. 538, 575 S.E.2d 148 (2002) (West Virginia state courts have subject matter jurisdiction over federal preemption defenses); *Chevy Chase Bank v. McCamant*, 204 W.Va. 295, 512 S.E.2d 217 (1998), citing *FMC Corp. v. Holliday*, 498 U.S. 52, 111 S.Ct. 403, 112 L.Ed.2d 356 (1990) (addressing the issue of whether the West Virginia Consumer Credit and Pro-

---

6. In *National Labor Relations Board v. Broyhill Company*, 514 F.2d 655, 658 (8th Cir.1975), the Court of Appeals noted that the determination of who is authorized to act as a supervisor in the interest of the employer is a fact question and a matter of practical application by the National Labor Relations Board to the infinite gradations of authority within a particular industry. *See also*, *Goldies, Inc., v. National Labor Relations Board*, 628 F.2d 706, 710 (1st Cir.1980). In *National Labor Relations Board v. Whitin Machine Works*, 204 F.2d 883 (1st Cir.1953), for example, an assistant supervisor in his employer's accounting department was, upon a consideration of the nature of his work, determined not

to be a supervisor for purposes of litigating his discharge from employment, and, therefore, he was entitled to the protections of the National Labor Relations Act. 204 F.2d at 886.

An exception to the exclusion of supervisors, however, was recognized in *National Labor Relations Board v. Oakes Machine Corporation*, 897 F.2d 84 (2nd Cir.1990). In *Oakes Machine*, the Court indicated that an exception to the statutorily imposed exclusion of supervisors from the protection of the National Labor Relations Act is that an employer may not discharge a supervisor in retaliation for his testimony or his threat to testify in NLRB proceedings. 897 F.2d at 92.

tection Act was preempted by the federal Fair Debt Collections Practices Act, holding that there is a strong presumption that Congress does not intend to preempt areas of traditional state regulation); *Martin Oil Co. v. Philadelphia Life Ins. Co.*, 203 W.Va. 266, 507 S.E.2d 367 (1997) (state law actions having incidental involvement or referral to ERISA plans do not present risk of conflicting or inconsistent state law application and are not preempted); *Hartley Marine Corp. v. Mierke*, 196 W.Va. 669, 474 S.E.2d 599 (1996), *cert denied sub nom, Hartley Marine Corp. v. Paige*, 519 U.S. 1108, 117 S.Ct. 942, 136 L.Ed.2d 832 (1997) (preemption is disfavored in the absence of convincing evidence warranting its application).

In preemption cases, this Court has followed the United States Supreme Court's teaching that "[b]ecause the States are independent sovereigns in our federal system, we have long presumed that Congress does not cavalierly pre-empt state-law causes of action. In all preemption cases, and particularly in those in which Congress has 'legislated ... in a field which the States have traditionally occupied,' *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230, 67 S.Ct. 1146, 91 L.Ed. 1447 (1947), we start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485, 116 S.Ct. 2240, 135 L.Ed.2d 700, 715 (1996) (internal quotations and citation omitted). *Cf. In re: West Virginia Asbestos Litigation*, 215 W.Va. 39, 42–43, 592 S.E.2d 818, 821–22 (2003).

In the present case, it cannot be said that the clear and manifest intent of the Congress in passing the NLRA was to deprive West Virginia of the ability—indeed, to deprive our state of the fundamental right of jurisdiction—to legislate or provide common law relief for alleged wrongful acts, even if those acts occurred as part of a unionizing effort. The majority opinion, while discussing the case, failed to heed the *guidance* offered by the United States Court of Appeals in the related case of *Lontz v. Tharp*, 413 F.3d 435 (4th Cir.2005). The Federal Court of Appeals in *Lontz* found that sections 7 and 8 of the NLRA did "not work to completely preempt the kind of state law claims that the plaintiffs are pressing.... In this case, we cannot find complete preemption if for no other reason than that Congress has chosen not to create a cause of action" in the federal courts. *Lontz* at 442–443. The "sine qua non of complete preemption is a pre-existing *federal* cause of action that can be brought in the district courts." *Lontz* at 442, *citing Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 9, 123 S.Ct. 2058, 156 L.Ed.2d 1 (2003) (emphasis in original opinion).

The Court of Appeals in *Lontz*, therefore, concluded that Sections 7 and 8 did not create a cause of action, and that the issue of preemption would be left to West Virginia to decide. Unfortunately for West Virginia, the majority has "decided" that the appellants' claims are "preempted" by the NLRA because the appellants' allegations "implicate the scope and reach of sections 7 and 8 of the [NLRA]." This conclusion is wrong. It was "not the intent of Congress to preempt all labor disputes" that merely implicate federal labor laws; more is required to be shown before there is preemption. *General Motors Corp. v. Smith*, 216 W.Va. 78, 84, 602 S.E.2d 521, 527 (2004) (discussing, *inter alia*, preemption in Employee Retirement Income Security Act and Labor Management Relations Act cases).

Appellants Lontz and Pettit were supervisors for the appellee Holiday Inn Express. Appellant Lontz has alleged that members of the management of Holiday Inn Express "met with her and instructed her to seek the assistance of a deputy sheriff (a friend of [Lontz's]) and have a union organizer arrested." *Lontz, supra*, at 438. Lontz refused, and management allegedly made her work place environment intolerable following her refusal, resulting in the constructive firing of Lontz. Appellant Pettit was allegedly fired because management became convinced she assisted and encouraged unionizing activities.

Under West Virginia law, the appellants *had* legal remedies for the alleged wrongful acts of the appellees prior to the majority's opinion. One such remedy was the tort of outrage, whereby conduct "so outrageous in

character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community" can form the basis for an action in West Virginia. *Hines v. Hills Dept. Stores, Inc.*, 193 W.Va. 91, 454 S.E.2d 385 (1994), *citing* comment (d) to Section 46 of the *Restatement (Second) of Torts*, and Syllabus Point 6 of *Harless v. First National Bank in Fairmont*, 169 W.Va. 673, 289 S.E.2d 692 (1982).[1]

In the instant case, the allegation that management conspired to have a person wrongfully arrested—to wrongfully deprive another person of his or her liberty—and then retaliated against appellant Lontz when she refused to be a part of that illegal conspiracy, certainly qualifies, if proven, as "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Hines, supra,* at 95, 454 S.E.2d 385.

Whether Lontz was constructively discharged for refusing to be a part of a criminal conspiracy does not require the interpretation of any federal statutes to provide her relief. She either was, or was not, required to have someone wrongfully arrested as a condition of her employment and thereby herself engage in illegal activity. Whether the basis for management's alleged criminal activity arose from "unionizing activity" is not a fact that any jury would be required to find in order to grant relief to Lontz. Therefore, appellants' state law claims do not even implicate the NLRA, except in an incidental, non-germane, manner. As in *Martin Oil Co., supra,* the appellants' state law claims had only "incidental involvement or referral" of the NLRA and therefore "do not present the risk of conflicting or inconsistent state law" in the application of the NLRA. Whether Lontz was constructively fired for refusing to engage in illegal activity is the sole issue that a jury must decide, not some intricacy of the NLRA. The majority opinion fails to see this distinction.

The majority opinion has failed to protect the sovereignty of our state and has surrendered West Virginia's jurisdiction where it was completely unnecessary to do so. For this reason, I dissent.

---

1. Syllabus Point 6, *Harless, supra,* "One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm."